In re the MARRIAGE OF Linda
L. GAER and Galen D. Gaer.

Upon the Petition of Linda
L. Gaer, Appellant,

And Concerning Galen
D. Gaer, Appellee.

No. 90–1497.

Supreme Court of Iowa.

Oct. 16, 1991.

Robert Kohorst of Kohorst Law Firm,
Harlan, for appellant.

Ken Sojka of Buckley & Sojka Law Offices, Harlan, for appellee.

Considered by HARRIS, P.J., and
SCHULTZ, CARTER, LAVORATO, and
SNELL, JJ.

LAVORATO, Justice.

The marriage of Linda L. Gaer and Galen D. Gaer was dissolved in August 1990. Linda appeals from the dissolution decree, challenging certain economic provisions.

We affirm in all respects save one, and modify the child support award accordingly.

## I. *Background Facts and Proceedings.*

Linda and Galen Gaer were married in 1969. Three children were born of this marriage: Galen Jr., age twenty, Kelly, age seventeen, and Nicholas, age eleven. Only Kelly and Nicholas are affected by the district court's decree.

Galen is a self-employed truck driver. Linda works part-time.

Schedule C of the parties' 1989 federal income tax return shows that Galen had a gross income of $78,193. Total business expenses are shown as $63,193, which includes depreciation in the amount of $16,-335. Net profit is reported at $15,746.

Galen's financial statement shows deductions for federal income tax in the amount of $135 per month, social security tax in the amount of $170 per month, and state income tax in the amount of $40 per month.

In her financial statement Linda lists net monthly income of $424 after deductions for federal income tax, state income tax, and social security tax.

When the Gaers filed their joint 1989 tax return, they used certain Internal Revenue Code depreciation deductions. *See* I.R.C. §§ 167, 168, 179 (1989). Section 179 allowed them to take a $10,000 accelerated depreciation deduction on a 1982 semi-truck tractor they purchased in 1989 for Galen's business use. Under the Modified Accelerated Cost Recovery System (MACRS) they took an additional depreciation of $3,500 on the semi-truck tractor. Under the Accelerated Cost Recovery System (ACRS) they depreciated Galen's 1980 semi-truck trailer for $2,835. The net result to the Gaers of these credit techniques was two-fold: (1) a significant reduction of their joint net taxable income, (2) which greatly reduced their joint tax liability.

In March 1990 Linda filed a dissolution of marriage petition. A decree of dissolution was entered in August 1990. The district court awarded joint custody of the two minor children to Linda and Galen, with physical care to Linda.

The district court awarded Linda child support of $265 per month ($132.50 for each minor child). Linda did not request alimony.

The homestead was also awarded to Linda. The court set the fair market value of the homestead at $36,347. This was the amount of the mortgage lien on the property. Linda was also awarded the furnishings, the car, and the motorcycle. Her assets additionally included the value of a small checking account and tax refund, and personal loan to Galen Jr.

Galen was awarded the semi-truck tractor and trailer, the pickup truck, the value of his life insurance policy, and a $3,000 checking account. He was ordered to pay the parties' debts with the exception of the homestead mortgage.

In total, Linda received net assets valued at $14,358; Galen received net assets valued at $15,284.

Linda was dissatisfied with the district court's child support award and valuation of the homestead. She moved to enlarge or amend the court's determinations and to modify the dissolution decree. *See* Iowa R.Civ.P. 179(b). Galen resisted that motion.

In her motion Linda challenged the district court's deduction of depreciation expense in calculating Galen's net monthly income under our child support guidelines. The district court disagreed, finding that depreciation is a cost of producing income. Consequently, all depreciation deductions were included in the calculation of Galen's available net income.

The district court further found that valuation of the Gaers' home was established by Galen's financial affidavit and his testimony as to the fair market value of the property. It was inconceivable to the court that Linda would request to be awarded the homestead subject to encumbrances un-

less that property had a fair market value equal to such encumbrances.

Linda appeals from the dissolution decree. She restates the issues she raised in her unsuccessful Rule 179(b) motion. Linda also asks for appellate attorney fees.

■ Our scope of review here is de novo. Iowa R.App.P. 4. We give weight to the fact findings of the trial court but are not bound by them. Iowa R.App.P. 14(f)(7). There are no hard and fast rules governing the economic provisions in a dissolution action; each decision depends upon the unique circumstances and facts relevant to each issue. *In re Marriage of Wiedemann*, 402 N.W.2d 744, 747 (Iowa 1987). Prior cases have little precedential value, and we must rest our decision primarily on the particular circumstances of the parties presently before us. *In re Marriage of Weidner*, 338 N.W.2d 351, 356 (Iowa 1983).

II. *The Child Support Award.*

■ The district court entered a decree in this case on August 8, 1990. At that time permanent child support guidelines were in effect pursuant to our order of September 29, 1989 (old guidelines). New permanent child support guidelines went into effect on December 31, 1990, pursuant to our order of October 16, 1990 (new guidelines).

In our de novo review we apply the old child support guidelines to determine Galen's child support obligation until December 31, 1990. We apply the new child support guidelines to determine such obligation from and after December 31, 1990.

■ Net monthly income under the old guidelines is pertinently defined as follows:

In the guidelines the term "net monthly income" means gross monthly income less deductions for:

(1) Federal income tax;

(2) State income tax;

(3) Social security deductions;

. . . .

Under the new guidelines net monthly income is similarly pertinently defined:

In the guidelines the term "net monthly income" means gross monthly income less deductions for:

(1) Federal income tax (properly calculated withholding or estimated payments);

(2) State income tax (properly calculated withholding or estimated payments);

(3) Social security deductions;

. . . .

Neither the old nor the new guidelines make any mention of depreciation deductions. But under both guidelines the district court has some discretion to vary from them. The court may vary from the guidelines if it finds in writing that

the guidelines would be unjust or inappropriate as determined under the following criteria:

(1) Substantial injustice would result to the payor, payee, or child;

(2) Adjustments are necessary to provide for the needs of the child and to do justice between the parties, payor, or payee under the special circumstances of the case; and

(3) Circumstances contemplated in Iowa Code section 234.39 [cost of services provided by the Iowa department of human services].

In short, these criteria provide flexibility on the question whether to allow or disallow all or any part of depreciation as a deduction from gross income.

Other jurisdictions have addressed the question whether the obligor should be given the benefit of depreciation in calculating the child support or alimony award.

In *Stewart v. Stewart*, 243 Mont. 180, 793 P.2d 813 (1990), the obligor parent was a self-employed home builder. He appealed from the trial court's judgment in a modification action, alleging abuse of discretion. In modifying the obligor's child support payments upward, the trial court disregarded business and depreciation losses as shown in the obligor's federal income tax returns. The Montana supreme court affirmed the lower court calculations. Persuaded that taxable net income is not always coterminous with net disposable in-

come in the calculation of child support, the court found that:

> Under the Guidelines, the primary focus for determining available income for paying child support is based upon a parent's *disposable* income rather than their *taxable* income.... [L]egitimate business expenses do not include those losses that exist primarily on paper and have little effect upon a parent's disposable income.

*Id.* at 181–83, 793 P.2d at 814.

Further, the court was convinced that including depreciation deductions in calculating net disposable income available for child support gives the obligor parent a windfall:

> [A]n analysis of the purpose of depreciation ... supports the premise that depreciation is not an acceptable exclusion in calculating disposable income. Two types of depreciation are generally allowed by the Internal Revenue Service in the calculation of taxable income. These two types are straight line depreciation and accelerated depreciation.... Both types of depreciation are permitted as a tax deduction to allow individuals to *regain* their business expenditures....
>
> Since the purpose of depreciation is to assist a person in *regaining* their expenditures, it does not follow that depreciation is a business *expense* for the calculation of disposable income under the Guidelines.

*Id.* at 183–84, 793 P.2d at 815.

Other courts have also added back depreciation deductions in their calculations of disposable net income available for child support and alimony. *See Pierce v. Pierce,* 268 Ark. 864, 865–68, 596 S.W.2d 364, 365–66 (Ark.App.1980) (finding that tax return alone is not an accurate indicator of self-employed obligor's available expendable income where obligor claimed reduced income due to depreciation on business equipment); *Turner v. Turner,* 586 A.2d 1182, 1188 (Del.1991) (application of common law mathematical formula in calculating child support award would yield to balance equities in appropriate circumstances; obligor not allowed to deduct any accelerated depreciation as a business expense); *Harloff v. Harloff,* 279 So.2d 91, 91 (Fla.App.1973) (trial court dissolution decree defined net income as total gross income received by obligor less ordinary business expenses expended to earn said income; said ordinary expenses did not include depreciation or taxes); *Compton v. Bertaut,* 359 So.2d 1131, 1132 (La.App.1978) (depreciation ignored in determination of obligor parent's cash flow where obligor submitted tax returns as evidence of dire financial circumstances); *Eberly v. Eberly,* 12 Md.App. 117, 126–29, 278 A.2d 107, 112–13 (1971) (finding that lower court specifically considered obligor's depreciation deduction on real estate in raising amount of alimony); *In re Marriage of Deatherage,* 595 S.W.2d 36, 39 (Mo.App.1980) (recognizing case law indicating depreciation should be considered as an available asset for calculating child support in a final decree, without deciding the issue); *In re Scheer's Marriage,* 13 Or.App. 551, 552–54, 513 P.2d 174, 175 (1973) (acknowledging depreciation on professional equipment of obligor husband raised his cash flow each month); *Cunningham v. Cunningham,* 378 Pa.Super. 280, 281–82, 548 A.2d 611, 612 (1988) (finding it well established that depreciation and depletion expenses, allowed under federal income tax law without proof of actual loss, will not automatically be deducted from gross income in determining alimony and equitable distribution), *appeal denied,* 522 Pa. 576, 559 A.2d 37 (1989); *Laprade v. Laprade,* 784 S.W.2d 490, 493 (Tex.App.1990) (holding no error in awarding child support relying on factors [for example, depreciation] outside those listed in state child support guidelines; specifically no error in trial court taking depreciation tax credits into consideration).

Further, this court has disregarded paper losses when calculating available income in analogous contexts. *See In re Marriage of Murray,* 213 N.W.2d 657, 660 (Iowa 1973) (finding trial court erred in subtracting asserted corporate losses from obligor's personal income in determining obligor's "net usable income" available for alimony, as such a computational approach results in a "double deduction").

An overview of depreciation deduction decisions illustrates three basic positions courts have taken when confronted with the depreciation problem in dissolution cases. These are summarized in *Stoner v. Stoner*, 163 Conn. 345, 349–51, 307 A.2d 146, 151 (1972):

> [C]ase law in other jurisdictions reveals that there are three different basic approaches to the problem, namely, that (1) depreciation is a book figure which does not involve any cash outlay nor reduce actual dollar income and, therefore, should not be allowed as a deduction; that (2) depreciation diminishes income-producing capacity and leads to the eventual replacement of the asset involved thereby warranting its deduction; and that (3) depreciation should not categorically either be deducted as an expense or treated as income, but rather that the extent of its inclusion, if any, should depend on the particular circumstances of each case.

In *Stoner* the court explained depreciation for tax purposes this way:

> The depreciation charge permitted as a deduction from the gross income in determining the taxable income of a business for any year represents the reduction, during the year, of the capital assets through wear and tear of the plant used. The amount of the allowance for depreciation is the sum which should be set aside for the taxable year, in order that, at the end of the useful life of the plant in the business, the aggregate of the sums set aside will (with the salvage value) suffice to provide an amount equal to the original cost. The theory underlying this allowance for depreciation is that by using up the plant, a gradual sale is made of it.

*Id.* at 349–53, 307 A.2d at 151–52.

In addition the court saw depreciation for what it really is:

> Depreciation is a mere book figure which does not either reduce the actual dollar income of the defendant or involve an actual cash expenditure when taken. On the contrary, it represents additional cash available to the defendant by permitting substantial tax deductions and, ultimately, tax savings. The fact that the defendant may use some or all of the cash represented by depreciation to pay off principal indebtedness on the property is of no consequence since such payments, in effect, increase his net worth and estate by increasing his equity.

*Id.* at 352–53, 307 A.2d at 152.

Finally, the court explained why the question whether to allow depreciation as a deduction in calculating income available for support should be left to the discretion of the court:

> Accordingly, while we conclude that depreciation should not be treated as an expense, this is not to say that depreciation should categorically be characterized as a net profit. If ... [the defendant] is compelled to expend or exhaust his capital, without opportunity to maintain and preserve that which makes his business possible, it will eventually work to the detriment of both the parties. In formulating a workable and flexible approach between the two extremes we hold that the amount of depreciation, if any, to be considered in determining the availability of net income for the purposes of alimony and support awards is best left to the court's discretion "determined from all the circumstances including the amount of depreciation claimed and the property depreciated."

*Id.* (citations omitted).

Several of the courts cited in this opinion have followed the first approach and have categorically disallowed depreciation in calculating net disposable income. Others have followed the third approach and have disallowed depreciation in calculating net disposable income only when the equities warrant it.

We find the reasoning of the Connecticut court in *Stoner* persuasive. That reasoning convinces us to adopt the third approach because it is the more prudent one. The third approach is also consistent with the flexibility our guidelines provide to deviate from them when equity and justice demand it.

Here we think adjustments relative to depreciation are necessary to provide for the needs of the children and to do justice between the parties. We think in the circumstances of this case, Galen should be allowed a deduction for depreciation determined under the straight line method of depreciation rather than under the accelerated method. *See* I.R.C. § 167(b)(1) (under the straight line method the cost of the property less its estimated salvage value is deducted in equal amounts each year over the period of its remaining estimated useful life). Such an adjustment would give Galen sufficient cash flow to replace the semi-truck tractor and trailer. At the same time depreciation would be spread out evenly over the useful life of these items rather than a substantial part of it being taken in the first years.

In reaching this conclusion we recognize that *some* consideration must be given to business expenses reasonably necessary to maintain the business or occupation. This *may*, as here, include a reasonable allowance for straight-line depreciation. After considering these matters, the court— where warranted—should adjust gross income before applying the guidelines. Any other approach may discriminate between wage earners and self-employed persons.

The 1980 trailer was purchased in 1986 at a cost of $13,500. We think a reasonable amount for salvage value is twenty percent of the trailer's cost or $2700. An appraisal put the value of the trailer at $5000, which we think amply supports our salvage value determination. The parties' 1989 federal income tax return shows a useful life of five years. Using these figures, we arrive at a depreciation deduction of $2160 for the trailer under the straight line method of depreciation.

The 1982 semi-truck tractor was purchased in 1989 for $20,500. Galen testified that ten years would be a rough estimate of a useful life for such trucks. According to the appraisal, the semi-truck tractor had a present value of $17,500. Giving the semi-truck tractor a remaining useful life of three years and a salvage value of $10,000 is therefore well within the evidence and fair to Galen. Using three years as a remaining useful life and assigning a salvage value of $10,000, we arrive at an annual depreciation deduction of $3500 for the semi-truck tractor under the straight line method of depreciation.

We arrive at a total allowable annual depreciation deduction of $5660 ($2160 for the trailer and $3500 for the semi-truck tractor) in determining net monthly income under the child support guidelines.

Under the old guidelines we determine Galen's monthly child support this way:

| | |
|---|---|
| $78,939 | gross income (per schedule C) |
| (48,858) | actual out of pocket business expenses not including depreciation of $16,335 (per schedule C) |
| (5,660) | allowable annual depreciation deduction under our calculations |
| (2,040) | social security (per financial statement) |
| (480) | state income tax (per financial statement) |
| (1,620) | federal income tax (per financial statement) |

| | | |
|---|---|---|
| | 20,281 | |
| divided by | 12 | |

| | | |
|---|---|---|
| | $ 1,690 | net monthly income available for child support rounded off to nearest dollar |
| × | .32 | |

| | | |
|---|---|---|
| | $ 541 | monthly child support obligation rounded off to nearest dollar ($271 per child) |

**330**

Under the new guidelines Galen's monthly child support would be $580 ($1690 × 34.3%) or $290 per child.

We modify the child support award by ordering Galen to pay monthly child support of $271 for each of the two minor children from August 15, 1990, until January 1, 1991. The monthly child support shall increase to $290 per child beginning in January 1991. In all other respects, the district court's child support determination is affirmed.

### III. *The Homestead Valuation.*

 Contrary to Linda's contention, we find the value ($36,347) the district court placed on the residence was well within the permissible range of evidence. *In re Marriage of Wilson,* 449 N.W.2d 890, 894 (Iowa App.1989). The homestead was purchased in 1981 for $46,700. Improvements totaling $1500 were added after the purchase. Linda's original financial statement placed the value at $50,000; Galen's placed it at $36,347. Galen's valuation matched the amount of encumbrance against the homestead. Linda later changed her valuation figure to reflect a real estate appraisal of $32,500.

The district court was in the best position to determine the credibility of the valuation evidence presented. For these reasons we do not disturb the district court's valuation determination on appeal.

### IV. *Attorney Fees.*

Linda asks for appellate attorney fees. An award of attorney fees is discretionary and acknowledges the parties' financial positions. *In re Marriage of Kern,* 408 N.W.2d 387, 390 (Iowa App.1987). Specifically, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Castle,* 312 N.W.2d 147, 150 (Iowa App.1981). The record before us justifies awarding attorney fees of $750 to Linda.

Costs are divided equally between the parties.

AFFIRMED AS MODIFIED.