In re the MARRIAGE OF Beverly
Marie STARCEVIC and Kim
Evan Starcevic

Upon the Petition of Beverly Marie
Starcevic, Appellee/Cross–
Appellant,

And Concerning Kim Evan Starcevic,
Appellant/Cross–Appellee.

No. 93–963.

Court of Appeals of Iowa.

Aug. 25, 1994.

Patrick F. Curran of Vinyard & Curran, Ottumwa, for appellant.

Annette J. Scieszinski of Scieszinski & Owens, Albia, for appellee.

Heard by DONIELSON, C.J., and SACKETT and HUITINK, JJ.

HUITINK, Judge.

Kim Starcevic appeals the child support and economic provisions and Beverly Starcevic cross-appeals the attorney fee provisions of their dissolution decree. We affirm.

Beverly is thirty-eight, and Kim is thirty-seven years of age. They were married sixteen years and have three children: Eric, born October 1979; Amanda, born September 1981; and Gregory, born April 1986.

Beverly is a preschool teacher. Her net monthly income is $1236.95. Kim works full-time for Maytag in Newton and earns net monthly wages in the amount of $2067.84. Kim also has a cattle farm operation on the side. His net monthly income from farming is $186. The district court arrived at this figure by adding back amounts claimed on Schedule F (depreciation allowances) and applying a fifteen-percent tax rate. The court determined his total income for guideline purposes was $2253.99.

Physical custody of the children was awarded to Beverly. The court ordered Kim to pay $789 per month child support while all three children are minors.

Kim was awarded the entire farming operation, including livestock, machinery, and equipment. Beverly was awarded the marital home, some household items, and a $35,000 cash adjustment, payable with interest over the next ten years.

Our review in equity actions is de novo. Iowa R.App.P. 4. We give weight to the trial court's findings of fact, especially when considering the credibility of witnesses, but we are not bound by them. Iowa R.App.P. 14(f)(7).

Kim contends the district court erred in determining his income from the farm for child support purposes because it disallowed his depreciation deduction on farm equipment. We disagree.

In *In re Marriage of Gaer*, 476 N.W.2d 324 (Iowa 1991), our supreme court analyzed other jurisdictions' treatment of the issue of depreciation in calculating child support. The supreme court recognized the inclusion of depreciation deductions in calculation of net disposable income available for child support may give the obligor parent a windfall. *Id.* at 327. In addition, it recognized the allowance of "paper losses" may result in an unfair child support calculation. *Id.*

The fair approach, as adopted by the supreme court, is that:

depreciation should *not* categorically either be deducted as an expense or treated as income, but rather that the extent of its inclusion, if any, should depend on the particular circumstances of each case.

*Id.* at 328. The circumstances in *Gaer* required a deduction for straight-line depreciation be allowed in order to obtain an equitable result. However, this case is factually distinguishable from *Gaer* and the line of cases following it which also allow a deduction for straight-line depreciation.

Kim earns a net monthly income of $2067.84 from Maytag and $186 from his cattle farm operation. He does not engage in farming to sustain himself or his family. His farm is, at best, a hobby and, at worst, a tax shelter. If farming served as Kim's sole source of income, equity would require allowing deductions for depreciation in determining child support.

However, we find it unacceptable as a matter of public policy to allow a person in Kim's position to generate paper losses which are then deducted from his primary income in order to avoid paying child support as deter-

mined by the child support guidelines. We are not required to give any consideration to those "business expenses reasonably necessary" to maintain a farming operation which is neither a business nor an occupation, but is instead a hobby or a tax shelter. *See id.* at 329.

Under the factual circumstances of this case, it would be inequitable to allow Kim *any* deduction for depreciation in calculating his income for child support purposes. We affirm the trial court on this issue.

■ Kim also contends the property division was inequitable. He argues the assets of the parties should be equally divided. We disagree.

■ The partners in the marriage are entitled to a just and equitable share of the property accumulated through their joint efforts. *In re Marriage of Russell,* 473 N.W.2d 244, 246 (Iowa App.1991). Iowa courts do not require an equal division or percentage distribution. *Id.* The determining factor is what is fair and equitable in each circumstance. *Id.* The distribution of the property should be made in consideration of the criteria codified in Iowa Code section 598.21(1) (1991). *In re Marriage of Estlund,* 344 N.W.2d 276, 280 (Iowa App.1983).

Kim was awarded the entire farming operation which will allow him to continue to reap favorable tax benefits in the future. Beverly was awarded a cash adjustment of $35,000 payable over ten years. The record indicates the property division was equitable and meets the needs of both parties. We affirm on this issue.

■ Beverly cross-appeals, contending the trial court erred when it failed to award her all or part of her attorney fees. We disagree.

■ Iowa trial courts have considerable discretion in awarding attorney fees. *In re Marriage of Giles,* 338 N.W.2d 544, 546 (Iowa App.1983). To overturn an award the complaining party must show the trial court abused its discretion. *Id.* Awards of attorney fees must be for fair and reasonable amounts, *In re Marriage of Willcoxson,* 250 N.W.2d 425, 427 (Iowa 1977), and based on

the parties' respective abilities to pay. *In re Marriage of Lattig,* 318 N.W.2d 811, 817 (Iowa App.1982).

Beverly argues Kim protracted the proceedings and intentionally caused Beverly to incur unnecessary legal expenses. While the record indicates this was not an amicable dissolution proceeding, it does not show an abuse of process by Kim. We cannot say the trial court abused its discretion in denying Beverly an award of attorney fees. We affirm on this issue.

■ Beverly also requests attorney fees on appeal. An award of attorney fees is not a matter of right, but rests within the court's discretion and the parties' financial positions. *In re Marriage of Kern,* 408 N.W.2d 387, 390 (Iowa App.1987). We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Castle,* 312 N.W.2d 147, 150 (Iowa App.1981). We award Beverly $2000 for appellate attorney fees.

We determine any other issues the parties may have raised are either covered by this opinion or are without merit. Costs are assessed to Kim Starcevic.

**AFFIRMED.**

DONIELSON, C.J., concurs.

SACKETT, J., concurs in part and dissents in part.

SACKETT, Judge (concurring in part; dissenting in part).

I concur in part and dissent in part. The issue before us is what income figure should be used to compute the child support obligation of a salaried father who also farms. The trial court did not adopt income as reported for income tax purposes but elected to disregard the depreciation deduction on farm machinery. The majority has affirmed. I disagree and find the depreciation adjustment should not have been made.

Kim works a full-time job at Maytag in Newton, and, also, has a cattle and farm operation. During the marriage he had both

the full time job and the farming and cattle operation. His basic contention is his income for purposes of applying the child support guidelines should be his income as defined by the Internal Revenue Code less applicable deductions for federal and state income tax and FICA. I agree with this contention in total.

The majority, however, has elected to recalculate his income for child support purposes. The majority has decided Kim should not be able to deduct depreciation on his farm schedule in computing child support.

Child support guidelines have come in response to a federal mandate. In 1988 Congress, in the Family Support Act,[1] required the states to enact guidelines to establish presumptions of correct child support in a given case. The guidelines came as a response to congressional concern about inadequacy of noncustodial parental support and lack of consistency and efficiency in establishing child support awards.

The states have been left free to develop their own guidelines and discretion in choosing the method of formulating their guidelines.[2] It was contemplated the guidelines would be fair in their particulars, as well as promote equity through uniformity.[3]

Before applying the guidelines there needs to be a determination of the net monthly income of the custodial and noncustodial parent.[4] *See In re Marriage of Powell*, 474 N.W.2d 531, 533 (Iowa 1991) (court must determine the parents' current income from most reliable evidence presented); *In re Marriage of Lalone*, 469 N.W.2d 695, 696 (Iowa 1991) (application of child support guideline chart first involves determination of net monthly income of each parent); *In re Marriage of Miller*, 475 N.W.2d 675, 678 (Iowa App.1991) (first step in using the child support guidelines is to arrive at "net monthly income").

This is one of a series of cases that have come before the Iowa appellate courts seeking further definition of "net monthly income" as used in the guidelines. *See In re Marriage of Gaer*, 476 N.W.2d 324, 326–30 (Iowa 1991) (in determining income available for child support, self-employed truck driver would be allowed deduction for straight line method of depreciation of truck); *Powell*, 474 N.W.2d at 533–34 (court may determine current monthly income based upon income prior to temporary unemployment); *Lalone*, 469 N.W.2d at 697 ("net monthly income" excluded alimony paid); *State ex rel. Dep't of Human Serv. v. Burt*, 469 N.W.2d 669, 671 (Iowa 1991) (amount father ordered to pay to be applied toward his accrued obligation for public assistance advanced in past is not deductible from gross income in determining net income under child support guidelines); *In re Marriage of Mayfield*, 477 N.W.2d 859, 861–62 (Iowa App.1991) ("net income" was properly found to equal average of last 2 years of taxable income); *Miller*, 475 N.W.2d at 678–79 ("net monthly income" did not

---

**1.** On October 13, 1988, the Family Support Act of 1988 (PL 100–485) was signed into law. This Act replaced the existing Aid to Families With Dependent Children (AFDC) Program with a new Family Support Program and significantly amends the Child Support Enforcement Program (Title IV, Part D of the Social Security Act). The intent of the Act is to: 1) reduce long-term welfare dependency by providing education, training, and employment to needy parents and 2) improve child support enforcement and establishment services available to children.

The Act has impact on issues of:
1) child support guidelines and periodic review for modification of orders;
2) immediate income withholding;
3) establishment of paternity;
4) visitation/custody demonstration projects; and
5) requirement for automated tracking and monitoring system.

*See generally* 42 U.S.C.A. §§ 657, 667.

**2.** For a discussion of the history of congressional action on child support guidelines, *see Fitzgerald v. Fitzgerald*, 566 A.2d 719, 723, 725 (D.C.App. 1989).

**3.** *Fitzgerald*, at 724.

**4.** 1. The guidelines are based on a determination of "net monthly income" which is gross monthly income less deductions for:
   a. Federal Income Tax;
   b. State Income Tax;
   c. Social Security Deductions;
   d. Mandatory Pension Deductions;
   e. Union Dues;
   f. Dependent Health Insurance Coverage;
   g. Individual Health/Hospitalization Coverage or Medical Expense Deductions not to exceed $25 a month.

exclude alimony paid); *In re Marriage of Jennings,* 455 N.W.2d 284, 287–88 (Iowa App.1990) (net monthly income under the guidelines means gross monthly income less specifically enumerated deductions).

The definition of income as used in the guidelines is most readily adaptable to the parent employed at a set monthly wage. It is more difficult when used in determining the income of a person who has income from self-employment. *See In re Marriage of Cossel,* 487 N.W.2d 679, 682 (Iowa App.1992). And may, when dealing with self-employment income, require an average of several years. *Id.*

It seems apparent, in nearly all cases, we should look to what is currently referred as "total taxable" income on the federal 1040 and as "net income" on the IA 1040. *Cossel,* 487 N.W.2d at 683. And, when a person has fluctuating income, average it over a period of several years so as to fairly spread income fluctuations. *See Cossel,* 487 N.W.2d at 682.

When we attempt to dissect income and fail to use a uniform definition of income, we are not following the federal mandate for consistency, uniformity, and efficiency. Income must be reported to the federal and state government in a particular way, and there are serious penalties for not following these reporting requirements. The result is what is defined on the federal tax return as "adjusted gross income." There is a degree of fairness in this system and these figures are most easily ascertained.

To have uniformity in the guidelines, we need a uniform definition of income for child support purposes. We are not doing a service to the bench, or bar, or parents, or children and are only asking for costly litigation when we refuse to use adjusted gross income as defined for federal tax purposes in computing child support.

If we do not use adjusted gross income for a self-employed person, then do we not use adjusted gross income for an employed person? How do we treat pension and life and health insurance benefits afforded a salaried worker when their value is not included in his or her adjusted gross income?

How can we discount depreciation, as the majority has here, without evidence of the fair market value of the equipment at the beginning and the end of the tax year? We cannot. Clearly, farm machinery, in nearly all cases, decreases in value with age. Furthermore, the farm machinery is paid for with after-tax dollars; consequently, depreciation is the only way to account for its decline in value with use.

Unfortunately, right now, Kim's farming is not showing a profit. He was farming when he and Beverly were married. The farming economy clearly has its ups and downs. Kim works hard at a job and pays substantial child support. When there is a profit on the farming operation, it should be a part of his child support obligation.

There are a large number of persons in this state who have jobs outside the farm and also farm. We have long respected our farm economy with its ups and downs.

I would compute Kim's child support obligation on his adjusted gross income less deductions for:

(1) Federal Income Tax;

(2) State Income Tax;

(3) Social Security Deductions;

(4) Mandatory Pension Deductions;

(5) Union Dues;

(6) Dependent Health Insurance Coverage;

(7) Individual Health/Hospitalization Coverage or Medical Expense Deductions not to exceed $25 a month.