In re the MARRIAGE OF Darrell Wesley DIEGER and Karin Rene Dieger.

Upon the Petition of

Darrell Wesley Dieger, Appellee,

And Concerning

Karin Rene Dieger, Appellant.

No. 97–1493.

Court of Appeals of Iowa.

June 24, 1998.

Robert W. Brinton and David R. Johnson of Brinton, Bordwell & Johnson, Clarion, for appellant.

G.A. Cady III, of Hobson, Cady & Cady, Hampton, for appellee.

Heard by CADY, C.J., and VOGEL and MAHAN, JJ.

VOGEL, Judge.

On appeal, Karin Dieger contests various economic provisions contained in the trial court's dissolution decree. The primary dispute centered around twenty shares of stock Darrell Dieger bought during the marriage. Because the trial court valued the stock according to a buy-sell agreement, and we find that value to be artificially low, we affirm as modified.

***Background facts.*** Darrell and Karin Dieger were married on August 29, 1992 after residing together for approximately one year. They separated in December 1994, but reconciliation efforts continued until July 1996. They had no children. The dissolution trial was held in July 1997.

At the time of trial Darrell was thirty-one years of age and in good health. He had a high school education and had been employed as a journeyman electrician for Packard Electric since his graduation from high school in 1984. His annual salary was approximately $32,000 to $33,000. In January 1994 the board of directors offered him the opportunity to purchase twenty shares of Packard Electric stock. The stock was subject to a corporate buy-sell agreement and the valuation of the stock, for the purposes of Darrell's purchase, was determined by the board of directors based on criteria listed in the shareholders agreement.

At the time of trial Karin was twenty-eight years old and in good health. She had graduated from college in 1991 and was taking courses in order to obtain a paralegal certificate, hoping to ultimately go to law school. She earned approximately $16,000, employed thirty hours a week at a law firm and twenty hours a week at the Iowa Cubs Club House.

■ ***Scope of review.*** In this equity action, our review is de novo. Iowa R.App. P. 4. We have a duty to examine the entire record and adjudicate anew rights on the issues properly presented. *In re Marriage of Steenhoek,* 305 N.W.2d 448, 452 (Iowa 1981). We give weight to the fact findings of the trial court, especially when considering the credibility of the witnesses, but are not bound by them. Iowa R.App. P. 14(f)(7); *In re Marriage of Vrban,* 359 N.W.2d 420, 423 (Iowa 1984).

***I. Property division.*** The trial court awarded Darrell net assets of $176,235, of which $82,000 was for the Packard Electric stock, using the buy-sell agreement value. Karen was awarded $35,218 net assets, with only $1074 representing her share of the stock.

■ The parties to a marriage are entitled to a just and equitable share of the property accumulated during the marriage. *In re Marriage of Starcevic,* 522 N.W.2d 855, 857 (Iowa App.1994). The equitable distribution of property should be made in consideration of the criteria codified under Iowa Code section 598.21. *Starcevic,* 522 N.W.2d at 857; *In re Marriage of Estlund,* 344 N.W.2d 276, 280 (Iowa App.1983).

■ ***A. Stock valuation.*** Karin argues the trial court incorrectly ruled the value of Darrell's stock was controlled by the terms of the buy-sell agreement.

The trial court rejected the $1.6 million valuation which Karin's expert placed on Darrell's Packard Electric stock. Instead, it accepted the Packard Electric board's determination that it was worth $82,000. The trial court found the stock had increased in value by $107.40 per share during the time of the marriage, and for her contributions during that time, Karin was entitled to one-half the value of the increase ($1074).

■■■ We note Packard Electric is a closely-held corporation, but does not have the limited marketability often attendant to a closely-held *family* corporation. *Cf. In re Marriage of Muelhaupt*, 439 N.W.2d 656 (Iowa 1989). We also note the book value of a given stock is not the only legitimate method of valuation, as it does not always reflect the true value of the stock to the person who holds it. *See* 18A Am.Jur.2d *Corporations* § 450 (1985) ("Nor is there a controlling presumption that the value of the stock of a corporation is its book value, without taking into consideration the earning capacity of the corporation"; among other factors used in determining the value of the stock is the dividend paying capacity of the stock); *accord In re Marriage of Moffatt*, 279 N.W.2d 15, 19 (Iowa 1979). The option price in a buy-sell agreement is "merely one factor to be considered in determining the value [of interest in the corporation] and is not determinative." *See Moffatt*, 279 N.W.2d at 19.

Neither do we adopt Karin's value of the stock. However, we find the method of appraisal used by her expert more closely reflects the value of the stock than the buy-sell agreement. Karin's expert delineated and utilized the income capitalization approach to valuing stock. The income capitalization approach is defined in her expert's Summary Appraisal Report as:

> A set of procedures in which an appraiser derives a value indication for income-producing property by converting anticipated benefits into property value. This conversion is accomplished either by (1) capitalizing a single year's income expectancy or an annual average of several year's income expectancies at a market-derived capitalization rate or a capitalization rate that reflects a specified income pattern, return

on investment, and change in the value of the investment; or (2) discounting the annual cash flows for the holding period and the reversion at a specified yield rate.

We find the stock to have a greater value than Darrell's experts assigned to it, as a greater value is supported by the outstanding dividend performance of the stock. Darrell purchased the stock for $65,567 from funds he borrowed from his mother. In just three years his investment returned $251,000 in dividends. It is unreasonable to assume the value of the stock to Darrell was only what he could sell it to the company for, in light of the fact it was producing such generous dividends. It stretches the bounds of reasonableness to value a goose for slaughter price when it lays golden eggs.

Before modifying to account for a higher stock valuation, we weigh on the equitable scale Darrell's contribution to obtaining the stock. The opportunity to purchase Packard Electric stock only comes after years of loyal service to the company. It was Darrell's devotion to the company, being a long-time employee many years prior to the marriage, that the board extended to him the rare opportunity to purchase the stock. For his premarital efforts and contribution, Darrell should be appropriately credited. We determine, after a review of the stock valuation method the trial court adopted as well as its ultimate disposition of property made, that Karin is entitled to $40,000 from Darrell, representing her interest in the stock and the dividends during the marriage.

*B. Other property*. Karin claims the trial court's distribution of other property was inequitable. As a result of the trial court's division of the parties' property, Darrell was ordered to pay Karin $31,407.12 for her interests in the various items of property awarded to him.

Having made the foregoing modification concerning stock valuation, we find the remainder of the assets divided between the parties by the trial court was equitable.

■■■ *II. Alimony award*. Karin asserts that she should have been awarded alimony as Darrell makes substantially more money than she does or can hope to in the

future. Alimony is not an absolute right; an award depends on the circumstances of each particular case. *In re Marriage of Whelchel,* 476 N.W.2d 104, 110 (Iowa App.1991). The discretionary award of alimony is made after considering the factors listed in Iowa Code section 598.21(3) (1995). Karin leaves a five-year marriage still young, in good health, and with a college degree. Considering all other factors, we affirm the trial court's denial of Karin's request for alimony.

■ *III. Attorney fees.* Finally, Karin argues the trial court erred in not awarding her trial attorney fees and requests Darrell pay her $3000 toward those fees. She further requests Darrell pay $2000 toward her appellate attorney fees, and the costs of Karin's experts at trial.

■ An award of attorney fees is not a matter of right, but rests within the courts discretion. *In re Marriage of Gilliam,* 525 N.W.2d 436, 439 (Iowa App.1994). We are to consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal. *In re Marriage of Roberts,* 545 N.W.2d 340, 345 (Iowa App.1996). We determine the trial court was within its discretion in not awarding any trial attorney fees to Karin. We further determine, however, that Darrell shall pay Karin $1500 for appellate attorney fees. Costs are assessed to Darrell. We deny Karin's request that Darrell pay for Karin's experts at trial.

Having considered all arguments before us on appeal, we affirm the decision of the trial court, as modified.

**AFFIRMED AS MODIFIED.**