**IN THE COURT OF APPEALS OF IOWA**

No. 13-1038
Filed August 13, 2014

**IN RE THE MARRIAGE OF JUDITH CLARK RUDMAN
AND ROBERT ALAN RUDMAN**

**Upon the Petition of
JUDITH CLARK RUDMAN,**
        Petitioner-Appellee/Cross-Appellant,

**And Concerning
ROBERT ALAN RUDMAN,**
        Respondent-Appellant/Cross-Appellee.
_____

        Appeal from the Iowa District Court for Story County, Dale E. Ruigh,

Judge.


        A husband challenges the alimony award to his former wife.  **AFFIRMED.**


        Joseph R. Cahill of Cahill Law Offices, Nevada, for appellant.

        Meredith C. Mahoney Nerem of Jordan & Mahoney Law Firm, P.C.,

Boone, for appellee.


        Considered by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**TABOR, J.**

Robert Rudman challenges the amount and duration of alimony payments ordered in the decree dissolving his marriage to Judith Rudman. Given the length of their marriage and the Rudmans' disparate incomes, we find the district court reached an appropriate alimony determination. We also approve Judith's request for appellate attorney fees.

**I.     Background Facts and Proceedings**

The parties were married in Florida in June 1995. Two years later, they moved to Ames. They had three children during the course of the marriage: R.C.R. (born in 1999), J.T.R. (born in 2001), and N.L.R. (born in 2003). All three children were in good physical health at the time of the trial.

Both Robert and Judith are highly educated. Robert graduated from Loyola University in Chicago, Illinois with a bachelor's degree in chemistry. He received his doctor of dental surgery (DDS) degree from Loyola in 1988. He then received a degree in oral and maxillofacial surgery in 1992. Robert became an assistant professor of dentistry at the University of Florida in Gainesville, Florida, until he moved to Iowa in 1997. At that time, Robert joined Drs. Fairall and Haugen at Ames Oral Surgeons, P.C. (AOS) in Ames. He has practiced there for sixteen years. AOS is owned by Ames Dental Specialists, LLC, of which Robert owns approximately thirteen percent. Based on the evidence presented, the district court estimated Robert earned around $583,000 a year. His earning capacity promises to continue as Robert is in good physical health.

Judith has a bachelor's degree in English and psychology from Vanderbilt University. She then obtained a doctorate degree in clinical and health

psychology from the University of Florida. She worked as an assistant visiting professor at the University of Florida before she was hired by the Morris Center, a treatment facility for neuro-cognitive behavioral disorders, where she worked until the family moved to Iowa in 1997. Judith worked full-time for the McFarland Clinic as a psychologist until the couple's first child was born. Judith stopped working full time so that she could be the primary caretaker for their three children.

Judith is currently employed part-time by Ames Counseling and Psychological Services in Ames, Iowa. She also works part-time at Farrell's Extreme Body Shaping as a fitness trainer. Judith made $45,345 last year. Judith is also in good physical health.

The parties have been living in separate residences since June 2011. During the separation, Robert deposited his paycheck into a joint account that Judith was free to use. Judith deposited her earnings in her own account.

Before trial, the parties agreed to split the marital property equally. The parties agreed the value of the marital assets was $3,698,935 and each party would receive $1,849,462. After the conclusion of trial, the parties discovered another jointly held asset that had not been brought to trial court. Robert then filed a motion for limited remand to permit the trial court to account for this marital asset.

The parties also agreed before trial to a joint custody and joint physical care agreement where the children will spend thirteen out of twenty-eight nights with Robert and the remaining time with Judith. Per the parties' agreement, Robert will pay child support in the amount of $3600 per month for so long as all

three children were eligible; when two of the children are eligible, Robert's payment will drop to $3100 per month; and then to $2200 as long as one child is still eligible.

The parties agreed to share equally costs for school fees, school supplies, St. Cecilia's tuition, school lunches, all of the children's activities, music lessons and equipment, cell phone costs, work-related child care, clothing, car insurance, and similar expenses.

Alimony was the only issue to be decided by the court at trial. Judith requested $10,000 per month for a period of ten years. Robert proposed to pay $2000 per month for the first year and $1000 per month for the second year, to help Judith transition to working full time. The trial court ordered Robert to pay $8100 per month for the first two years, and then $5800 per month for the next eight years. Robert appeals, challenging the amount and duration of the award.

**II.     Analysis**

**A.     Alimony**

Iowa recognizes three types of alimony: traditional, rehabilitative, and reimbursement. *In re Marriage of Francis*, 442 N.W.2d 59, 63-64 (Iowa 1989). Rehabilitative alimony is typically awarded when an economically dependent spouse seeks additional education or certification in order to reenter the workforce. *Id.* at 64. Reimbursement alimony is awarded when one spouse made economic sacrifices during the marriage that enhanced the other party's earning potential. *Id.* at 63. Traditional alimony is awarded when the economically dependent spouse is incapable of self-support. *Id.* at 63. Alimony does not need to be characterized as a particular category, and can be a mixture

of any or all of the three. *See In re Marriage of Becker*, 756 N.W.2d 822, 827 (Iowa 2008). The alimony awarded in this case appears to be a hybrid between rehabilitative and traditional.

The standard of review for the propriety of an alimony award is de novo. Iowa R. App. P. 6.907; *In re Marriage of Olson*, 705 N.W.2d 312, 313 (Iowa 2005). "Alimony is not an absolute right; an award depends on the circumstances of each particular case." *In re Marriage of Dieger*, 584 N.W.2d 567, 569–70 (Iowa Ct. App. 1998). The award is discretionary, and should be based on the factors identified by the legislature. *Id.* at 570. Those factors include, but are not limited to: (1) the length of the marriage; (2) the age and physical and emotional health of the parties; (3) the property distribution; (4) the education level of the parties at the time of the marriage and at the time the action commenced; (5) the earning capacity of the parties; and (6) the feasibility of the party seeking support become self-supporting at a standard of living enjoyed during the marriage. Iowa Code § 598.21A(1) (2013).

The district court is given "considerable latitude" in making determinations based upon section 598.21A(1). *In re Marriage of Anliker*, 694 N.W.2d 535, 540 (Iowa 2005). Only when the decree fails to do equity will we disturb its determination. *Id.* The district court appropriately weighed the statutory factors in determining the amount and duration of the alimony award.

The district court started by noting the eighteen-year length of the Rudman's marriage. The court considered the advanced degrees held by both parties, but also recognized the significant difference in their earning potentials:

Robert makes $583,000 a year compared to Judith's $45,345 a year.[1] In marriages of long duration with the spouses having uneven earning capacities, alimony is appropriate alongside a nearly equal property division. *In re Marriage of Weinberger*, 507 N.W.2d 733, 735 (Iowa Ct. App. 1993).

The district court found the parties did not live lavishly during the marriage, but did live quite comfortably. The court decided Judith was not likely to achieve the same standard of living with her income alone.

The court explained that Robert has ample ability to pay the amount ordered:

> Robert's income will be substantially greater than Judith's, even if Judith works fulltime outside the home. His monthly "cash flow" of approximately $28,000 will be sufficient to fund his child support payments, pay Judith alimony, cover his own expenses for the children as a joint physical caretaker, and still comfortably cover the living expenses associated with his maintenance of a standard of living reasonably comparable to the marital standard. The unique circumstances of this case support monthly alimony payments to Judith of $8,100 for two years and $5,800 for eight years. The financial burden on Robert of these payments will be lessened by his ability to deduct the alimony payments on his state and federal income tax returns. The financial benefit of the payments to Judith will be reduced to some degree by the inclusion of the payments in her income for tax purposes.

Robert argues he should not have to subsidize Judith's choice not to work full time. But the decree does not have that consequence. The alimony payments are higher for the first two years, to allow Judith to transition to full-time work if she chooses to do so. Judith's earning potential, even if she decides to work full time, remains a fraction of Robert's income. And at the end of the ten-

---

[1] Judith's boss testified she would make $90,695 a year working full-time.

year period of alimony payments, Robert will be sixty years old, not even at the traditional age of retirement. The duration is neither inappropriate nor excessive.

Robert argues the return from investments will propel Judith to financial security. But, as the district court points out, about half of the assets that Judith received are retirement accounts. Robert's analysis assumed an annual investment income of between $36,500 and $40,000, even though the parties never earned more than $22,000 annually from their undivided investments during the marriage. It is unlikely the return on investments will go far enough to allow Judith to be self-supporting at a level comparable to what she enjoyed during the marriage. We find the amount of alimony and the payment period to be equitable and should not be disturbed. *See In re Marriage of Brown*, 487 N.W.2d 331, 334–35 (Iowa 1992).

### B. Appellate Attorney Fees

Judith requests we order Robert to pay her appellate attorney fees in the amount of $7500. Robert argues each party should pay his or her own fees.

Appellate attorney fees are not a right, but instead rest in our discretion. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). "Specifically, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal." *In re Marriage of Gaer*, 476 N.W.2d 324, 330 (Iowa 1991). Given the position of the parties and Judith's successful defense of the district court's alimony decision, we find it is appropriate to award appellate attorney fees to Judith in the amount of $5000.

**AFFIRMED.**