# IN THE COURT OF APPEALS OF IOWA

No. 22-1299
Filed April 12, 2023

IN RE THE MARRIAGE OF AMANDA JANE BAINBRIDGE
AND TROY DOUGLAS BAINBRIDGE

Upon the Petition of
**AMANDA JANE BAINBRIDGE,**
        Petitioner-Appellee,

And Concerning
**TROY DOUGLAS BAINBRIDGE,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Plymouth County, Tod Deck, Judge.


        Troy Bainbridge appeals from the decree dissolving his marriage to Amanda

Bainbridge. **AFFIRMED.**


        William H. Larson of Klass Law Firm, L.L.P., Sioux City, for appellant.

        Michele Lewon of Michele Lewon, P.L.C., Sioux City, for appellee.


        Considered by Bower, C.J., and Badding and Buller, JJ.

**BULLER, Judge.**

This appeal arises from a 2021 dissolution of marriage between Amanda Bainbridge and Troy Bainbridge, centering on three disputes from the district court's decree. Troy argues that the district court erred in its valuation of his business, Bainbridge Capital, LLC (Bainbridge); the determination of his yearly income; and the award of spousal support to Amanda. Amanda requests appellate attorney fees. We find that equity was done, we affirm the dissolution decree, and we deny Amanda's request for appellate attorney fees.

### I. Background Facts and Proceedings

Amanda and Troy married in November 2000 and had four children together. At the time of trial, the older two children were young adults and mostly lived independently. The two younger children—both born in 2009—lived mostly with Amanda.

Amanda is a nurse anesthetist. She started working as a nurse in 2002 and earned her doctorate in 2021. Before the dissolution, she worked part time, earning about $171,000 per year, with the potential to earn $220,000 if she switched to full time. Troy is a high school graduate and spent his entire career in construction. He runs Bainbridge.

Bainbridge is a construction company that does mostly governmental contract work. Troy began Bainbridge in 2000—after the parties' marriage. At the time of trial, Troy owned 70% of Bainbridge and Amanda owned 30%. The business grew significantly during the marriage and, over the two years preceding the divorce, Amanda and Troy began drawing large amounts from the company.

By trial, the long-term debt of the business grew to more than $2 million and the pair incurred significant personal debt.

Amanda filed the petition for dissolution of marriage in December 2020. The parties stipulated before trial to legal custody of the minor children, placing physical care with Amanda and visitation with Troy. The remaining issues included Bainbridge's valuation, Troy's annual income, and whether Troy should pay spousal support to Amanda.

Trial was in December 2021, and the district court issued its dissolution decree in April 2022. The court valued Bainbridge at $800,000 and awarded the company to Troy. In addition, the court assigned Amanda an annual income of $220,000 based on full-time employment and Troy an annual income of $300,000 based on his salary and recent history of draws from Bainbridge. Based on the marital lifestyle and Troy's significantly higher income, the court ordered Troy to pay Amanda $1000 per month for the next ten years, until one of the parties dies or until Amanda remarries. Troy appeals.

## II.     Standard of Review

A dissolution-of-marriage proceeding is heard in equity, and we generally review the resulting dissolution de novo. *In re Marriage of Gust*, 858 N.W.2d 402, 406 (Iowa 2015). "We give weight to the factual determinations made by the district court; however, their findings are not binding upon us." *Id.* "We will disturb the trial court's order only when there has been a failure to do equity." *Id.* (citation and internal quotation marks omitted).

### III. Discussion

On appeal, Troy disagrees with the district court's valuation of Bainbridge, the determination of his yearly income, and the award of spousal support to Amanda. Amanda requests appellate attorney fees. We affirm and deny Amanda's request for appellate attorney fees.

### A. Valuation of Bainbridge Capital

Troy first challenges the district court's valuation of Bainbridge at $800,000 and contests the valuation's effect on the division of marital property. He argues the court should have not relied on Amanda's expert and did not consider all of the relevant evidence when valuing the company.

In dissolution-of-marriage cases, courts divide martial property equitably, considering the factors outlined in Iowa Code section 598.21 (2020). *In re Marriage of Hansen*, 733 N.W.2d 683, 702 (Iowa 2007). What qualifies as an equitable distribution depends on the circumstances of each case, as an equitable division is not necessarily an equal division. *Id.*

The property's value is generally determined as of the date of trial. *See In re Marriage of Driscoll*, 563 N.W.2d 640, 642 (Iowa Ct. App. 1997). Even so, "[t]here may be occasions when the trial date is not appropriate to determine values. Equitable distributions require flexibility and concrete rules of distribution may frustrate the court's goal of obtaining equitable results." *Id.* In reviewing the trial court's determination, we will not disturb the valuation of an asset if "it is within the range of permissible evidence." *In re Marriage of McDermott*, 827 N.W.2d 671, 679 (Iowa 2013).

When determining the value of a closely held business like Bainbridge, courts look to the intrinsic value of the business, as the market value of the stock can rarely be ascertained. *In re Marriage of Moffatt*, 279 N.W.2d 15, 19 (Iowa 1979). A wide range of evidence can show intrinsic value, such as the book value of the stock or the earnings capacity of the company. *Id.; In re Marriage of Dieger*, 584 N.W.2d 567, 569 (Iowa Ct. App. 1998). A court need not arrive at an exact value, only an overall equitable result. *Dieger*, 584 N.W.2d at 569. Because valuation is difficult, the trial court is given significant flexibility, such as the ability to devise its own scheme for valuation. *In re Marriage of Hitchcock*, 309 N.W.2d 432, 435 (Iowa 1981).

Amanda's expert on Bainbridge's value was a certified public accountant and valuation analyst. He provided a written report opining that the value of Bainbridge was $1,020,597 and testified to his findings at trial. Amanda's expert valued Bainbridge as of December 31, 2020, because that was the last date that complete information was available. Troy did not rebut Amanda's expert with his own expert, but instead summed the values of company assets, subtracted the liabilities, and arrived at a value of $480,187 for Bainbridge as of trial.

The district court found Amanda's expert persuasive and reasoned it was appropriate to value Bainbridge as of December 31, 2020, due to incomplete information after that date. In contrast, the court found Troy's valuation too volatile and unreliable, as his valuations fluctuated wildly depending on when he valued the company. Troy also failed to provide a compelling explanation for why Bainbridge's value would drop by more than half in the year between the expert's valuation and the time of trial. To some degree, the court split the difference and

adjusted Amanda's expert valuation down to $800,000 based on outstanding receivables and Bainbridge's uneven history of success. We agree with the district court's observations about the competing valuation evidence and find its ultimate conclusion about valuation was fair. *See In re Marriage of McKamey*, 522 N.W.2d 95, 97 (Iowa Ct. App. 1994) (taking the past several years of business activity into account when valuing a business). Because the $800,000 valuation is well within the "range of permissible evidence," *McDermott*, 827 N.W.2d at 679, we find no failure to do equity in the $800,000 valuation assigned to Bainbridge and reject Troy's challenge.

### B. Troy's Yearly Income

Troy next contends the district court erred in finding he earned $300,000 per year, based on his $80,000 annual salary and expected annual draws of $220,000 from Bainbridge. In considering a party's income, a court must consider all circumstances relating to that party's income. *In re Marriage of Powell*, 474 N.W.2d 531, 534 (Iowa 1991). For instance, if a party's income is subject to substantial fluctuations, an average of that income over several years may be appropriate. *Id.* As a whole, however, the parties' income must be determined from the most reliable evidence presented. *Id.*

Troy makes two arguments surrounding this claim. First, while Troy acknowledges his salary is $80,000, he argues his expected draws are only $63,245 based on an exhibit he submitted showing draws for 2021. Yet Troy admitted at trial that he made substantial draws not shown in the exhibit, and the district court identified about $200,000 in draws Troy made in the first seven months of 2021. Amanda also submitted an exhibit showing the parties made

more than $1.2 million in draws from 2016 through 2020, an average of nearly $250,000 annually. Considering the parties' recent draws from Bainbridge, Bainbridge's potential future earnings, and Troy's ownership of the company, we agree with the district court that Troy can be expected to draw $220,000 annually from Bainbridge.

Second, Troy argues the court should have subtracted the sum of the three-year cash-equalization payment amount—$120,818—from his annual income. Our precedent does not support this argument. *See Hansen*, 733 N.W.2d at 704 (calculating a party's income without subtracting a cash-equalization payment from it). This argument also ignores Troy's yearly fluctuations in income. Even if we were inclined toward this claim, Troy's math does not account for the drastic increase in his income after the three-year period ends. Like the district court, we decline to subtract the equalization payment from Troy's income.

### C. Spousal Support to Amanda

Troy also argues neither party should receive spousal support. An award of spousal support is not an absolute right, and any award depends on the particular circumstances of a case, dependent on the factors listed in Iowa Code section 598.21A. *In re Marriage of Olson*, 705 N.W.2d 312, 315 (Iowa 2005). A determining court must balance the ability of a spouse to pay support with the needs of the requesting spouse, while also considering the standard of living the parties enjoyed during the marriage. *In re Marriage of Stark*, 542 N.W.2d 260, 262 (Iowa Ct. App. 1995). We will not disturb an award of spousal support unless the district court failed to do equity. *In re Marriage of Pazhoor*, 971 N.W.2d 530, 541 (Iowa 2022).

The district court ordered Troy to pay Amanda spousal support in the amount of $1000 per month for ten years. The court did not specify which type of support it was awarding, and neither party claims error related to the type of support or its duration once ordered. *See id.* at 543–45 (discussing the types of spousal support, noting varying lengths for different types of support).

The parties were married for twenty-one years, a duration that favors spousal support. *See* Iowa Code § 598.21A(1)(a); *Pazhoor*, 971 N.W.2d at 542 (finding a seventeen-year marriage "weighs in favor of a substantial [spousal support] award"). Neither party identified significant health concerns for their age. *See* Iowa Code § 598.21A(1)(b). The parties received a near-equal distribution of marital property that the district court valued at more than $2.5 million, though the court noted the value of Troy's distribution is more open to interpretation and fluctuation. *See id.* § 598.21A(1)(c). Neither party showed a need or desire for additional education or training. *See id.* § 598.21A(1)(d).

Amanda is expected to earn an annual income of $220,000, and Troy is expected to earn an annual income of $300,000. While Amanda's income is substantial, she only worked part time while caring for the children, and she sacrificed at least some career success to benefit the marriage. *See id.* § 598.21A(1)(e). The parties lived a marital lifestyle commensurate with their high income, amassing a significant marital estate with multiple homes and enjoying regular vacations such as wine-tasting in California and skiing in Colorado. *See id.* § 598.21A(1)(f). Finally, we note the recent changes in tax law that make spousal support more burdensome for the payor and more favorable for the payee. *See id.* § 598.21A(1)(g); *In re Marriage of Mann*, 943 N.W.2d 15, 21 (Iowa 2020).

Considering all relevant factors, we agree Amanda should receive a spousal support award. In particular, Amanda's income alone will not allow her to maintain a lifestyle reasonably comparable to the standard during marriage. Troy earns a greater income and has the means to pay support. We find no lack of equity in ordering Troy to pay support to Amanda in the amount of $1000 per month for ten years.

### D. Appellate Attorney Fees

Finally, Amanda requests appellate attorney fees. An award of appellate attorney fees is within the appellate court's discretion. *McDermott*, 827 N.W.2d at 687. In making this determination, we consider the needs of the requesting party for an award of fees, the ability of the other party to pay attorney fees, and whether the requesting party was obligated to defend the trial court's decision on appeal. *In re Marriage of Moore*, 526 N.W.2d 335, 338 (Iowa 1994).

Amanda argues she should receive appellate attorney fees because Troy has significantly greater income and she was obligated to defend the district court's decision, which we affirm in its entirety. Even so, Amanda has sufficient means to pay her attorney fees, especially after receiving a sizable award of marital property. We decline to order Troy to pay Amanda's appellate attorney fees.

### IV.    Disposition

We affirm the district court's valuation of Bainbridge, determination of Troy's monthly income, and spousal support award. We also decline to order any appellate attorney fees. Costs are assessed to Troy.

**AFFIRMED.**

Bower, C.J., concurs; Badding, J., concurs specially.

**BADDING, Judge** (concurring specially).

I concur in the result reached, though with some hesitation as it relates to the spousal support awarded to Amanda. This case typifies the difficulty with the multifactored statutory approach used in our state to determine spousal support. *See In re Marriage of Gust*, 858 N.W.2d 402, 408, 410 (Iowa 2015) (noting the "law of spousal support under the multifactored statutory approach has been criticized for its arbitrary nature and lack of predictability," but stating "we are compelled to follow the traditional multifactor statutory framework"). While the multifactored approach allows for flexibility, that flexibility can lead to indiscriminate results, making it difficult for practitioners to advise their clients and judges to decide their cases. *See id.* at 408 (noting the "multifactored legal test in which all factors are relevant and none are dispositive can be extraordinarily difficult to consistently apply").

Here, for instance, there are just as many factors against making a spousal support award to Amanda as there are in favor of such an award, chief among them Amanda's ability to support herself at a standard of living *reasonably comparable* to that enjoyed during the marriage. *See* Iowa Code § 598.21A(1)(f) (2020); *In re Marriage of Pazhoor*, 971 N.W.2d 530, 543 (Iowa 2022) ("The award and duration of a traditional alimony award 'is primarily predicated on need and ability.'" (quoting *Gust*, 858 N.W.2d at 411). In past cases, this court has observed "[t]he fact one party may generate more income than the other is not the controlling factor in the alimony award where both parties have the education and potential to supply for themselves a very adequate living." *In re Marriage of Snyder*, No. 21-0438, 2022 WL 610322, at *6 (Iowa Ct. App. Mar. 2, 2022) (affirming rehabilitative

spousal support award of $2000 per month for thirty months in a sixteen-year marriage and denying recipient spouse's request for an award of traditional support); *accord In re Marriage of Borden*, No. 09-1148, 2010 WL 1050012, at *4 (Iowa Ct. App. Mar. 24, 2010) (modifying an award of $575 per month in traditional spousal support, payable until either party's death or the recipient's remarriage, to an award of $300 per month for forty-eight months where the recipient spouse left a twenty-three-year marriage "with an education and skills enabling her to support herself and accumulate additional funds to support her in retirement"); *In re Marriage of Grunder*, No. 03-1871, 2004 WL 1843316, at *3 (Iowa Ct. App. July 28, 2004) (affirming denial of spousal support in a fourteen-year marriage where the recipient spouse had an agricultural business degree, worked full-time during the marriage, and was capable of self-support).

It is also unclear what type—or types—of spousal support was or were awarded here. *See In re Marriage of Sokol*, 985 N.W.2d 177, 186 (Iowa 2023) (noting while courts "may issue hybrid awards," that "does not mean . . . that courts are free to award spousal support not corresponding to any recognized category of support"). The district court discussed the law on traditional, rehabilitative, and reimbursement spousal support but did not specify which applied to the award that was made. In defending that award on appeal, Amanda characterizes it as transitional—even though that was not a category discussed by the court, and it had only been formally adopted by the supreme court about a month before the district court issued its decree. *See Pazhoor*, 971 N.W.2d at 534. And since her brief was filed in this appeal, our supreme court has clarified that because

"transitional spousal support is focused on solving a short-term liquidity issue," it "generally should not exceed one year in duration." *Sokol*, 985 N.W.2d at 187.

Despite these issues, our case law has consistently emphasized the deference that is to be afforded to the district court in making spousal support awards. *See id.* at 182 ("Although our review is de novo, we afford deference to the district court for institutional and pragmatic reasons." (citation omitted)). As the supreme court explained in *Sokol*:

> The institutional deference afforded the district court in determining spousal support counsels against undue tinkering with spousal support awards. An appellate court should disturb the district court's determination of spousal support only when there has been a failure to do equity. Otherwise, when appellate courts unduly refine these important, but often conjectural, judgment calls, they thereby foster appeals in hosts of cases, at staggering expense to the parties wholly disproportionate to any benefit they might hope to realize.

*Id.* at 182–83 (cleaned up).

In order to avoid this undue tinkering, and in consideration of the deference to be afforded to the district court, I join in the majority's well-written opinion affirming the award of spousal support to Amanda—even though I would have reached a different result under the same factors considered by the district court and this court. *See id.* at 188 (Mansfield, J., concurring in part and dissenting in part) ("Unless and until our state adopts formal alimony guidelines, appellate courts should not be second-guessing lower courts' judgment calls.")*.*