# IN THE COURT OF APPEALS OF IOWA

No. 21-0593
Filed March 30, 2022

IN RE THE MARRIAGE OF KARA LYNN REDENIUS
AND RYAN ALLEN REDENIUS

Upon the Petition of
KARA LYNN REDENIUS,
        Petitioner-Appellee,

And Concerning
RYAN ALLEN REDENIUS,
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Wright County, Gregg R.

Rosenbladt, Judge.


        Ryan Redenius appeals the support provisions of a temporary order entered

during the proceedings to dissolve his marriage to Kara Redenius.  **AFFIRMED.**


        Dani L. Eisentrager, Eagle Grove, for appellant.

        Scott L. Bandstra, Des Moines, for appellee.


        Considered by Bower, C.J., and Vaitheswaran and Chicchelly, JJ.

**CHICCHELLY, Judge.**

Ryan Redenius appeals the support provisions of a temporary order entered during the proceedings to dissolve his marriage to Kara Redenius.[1] The district court granted the parties joint legal custody of their three children and placed them in Kara's physical care. Finding that Ryan earns about $90,000.00 per year, the court ordered Ryan to pay $1000.00 per month in temporary child support and $500.00 per month in temporary spousal support. It also ordered Ryan to pay $1000.00 toward Kara's temporary attorney fees.

Ryan challenges the amount of his temporary child support obligation, the award of temporary spousal support, and the award of temporary trial attorney fees. Generally, we review dissolution proceedings de novo. *See* Iowa R. App. P. 6.907; *In re Marriage of Mauer*, 874 N.W.2d 103, 106 (Iowa 2016). This means that we give weight to the district court's fact findings, even though they are not binding. *See Mauer*, 874 N.W.2d at 106. We will disturb those findings only if they fail to do equity. *See id.*

Resolution of the three issues on appeal first requires determination of the parties' earnings. *See, e.g.*, *In re Marriage of Wade*, 780 N.W.2d 563, 566 (Iowa Ct. App. 2010) (stating application of the child support guidelines requires determining the parties' net monthly income); *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 486–87 (Iowa 2012) (stating an award of spousal support depends

---

[1] Iowa Code section 598.10 (2021) allows the court to enter temporary orders for "the separate support and maintenance of the other party and the children and to enable such party to prosecute or defend the action." Unlike temporary custody orders, temporary orders for financial assistance are final judgments appealable as a matter of right. *See In re Marriage of Denly*, 590 N.W.2d 48, 50-51 (Iowa 1999).

on the circumstances of each case and factors the comparative earning capacities of the parties); *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006) (considering "the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal" in reviewing an award of trial attorney fees).

The parties agree that Kara earned $46,464.28 as a registered nurse in 2020, as shown in her W-2 Wage and Tax Statement. The main point of contention is Ryan's earnings, and the record before us on appeal is scant. Because of the COVID-19 pandemic, the order scheduling the hearing on temporary matters prohibited personal appearances. Instead of testimony, the court allowed each party to submit (1) an affidavit of no more than 5500 words, (2) up to three witness affidavits of no more than 750 words each, and (3) a rebuttal affidavit of no more than 1500 words. The court also allowed each party to submit "no more than five exhibits that number no more than 25 pages in total." Most of the record evidence relates to the child-custody determination, which is not at issue on appeal.

Ryan is self-employed. In her affidavit, Kara states that Ryan is the owner of Ida Corporation and co-owns USA Chemical with his brother. Based on $7500.00 monthly checks made out to Ida Corporation from USA Chemical in 2020, she alleges Ryan's income is $90,000.00 per year.[2] Ryan disputes this in his rebuttal affidavit, stating that he "own[s] 10% of Ida Corporation and 5% of USA Chemical" and his 2019 tax return reflects his income, which would be "the same

---

[2] The only other evidence Kara submitted addressing the parties' finances is a statement in her rebuttal affidavit that her attorney subpoenaed USA Chemical's bank records, which show "a monthly balance of between six and ten million dollars."

or similar" for 2020. Ryan submitted the parties' 2019 Iowa tax return, showing Ryan earned $7100.00 in business income and $21,905.00 in supplemental income for total earnings of $29,005.00. But the federal schedules from which those figures are derived are not in the record made to the district court and provided to us on appeal.[3]

The district court found it "evident that the respondent does have stable employment and makes about $90,000 per year." Ryan argues that the court erred by relying on the $7500.00 checks made to Ida Corporation in determining his income because no information was provided to show what the checks were for or that they directly benefited him when he owns only a ten percent share of the corporation. Ryan claims he earns only $29,005.00, as shown on his state tax return. However, we are "not limited to income that is reportable to the federal government as income." *Wade*, 780 N.W.2d at 566. And the tax return is incomplete without the federal schedules showing the source and amount of Ryan's gross profits or the deductions he took.

In determining self-employed income, we consider the reasonable expenses of maintaining the business. *See* Iowa R. Ct. 9.5(1)(c) ("Gross income from self-employment is self-employment gross income less reasonable business

---

[3] The instructions for completing the Iowa return require taxpayers to report the net business income from federal Schedule C (profit or loss from a sole proprietorship) on line 5 of step 5, "Business income/(loss)." They require taxpayers to report income or loss from federal Schedule E (supplemental income and loss from rental real estate, royalties, partnerships, S corporations, estates, trusts, real estate mortgage investment conduits, etc.) on line 10 or step 5, "Rents, royalties, partnerships, estates, etc." The instructions direct taxpayers to include a copy of those federal schedules—which allow deductions for various expenses, including depreciation—when filing their returns.

expenses."); *In re Marriage of Gaer*, 476 N.W.2d 324, 329 (Iowa 1991). But we also recognize the ability of a self-employed party to manipulate earnings reported on a tax return. *See, e.g., Gaer*, 476 N.W.2d at 328 (recognizing that depreciation "is a mere book figure which does not either reduce the actual dollar income of the defendant or involve an actual cash expenditure when taken" but rather "represents additional cash available to the defendant by permitting substantial tax deductions and, ultimately, tax savings" (citation omitted)); *In re Marriage of Wiedemann*, 402 N.W.2d 744, 748 (Iowa 1987) ("It is not uncommon for an owner to cover many normal personal living expenses through the corporation or to over-depreciate or undervalue inventory, all of which would decrease profits while increasing the owner's standard of living or the actual value of the company's assets."); *In re Marriage of Tollefsrud*, No. 12-1984, 2013 WL 4009659, at *1, *4 (Iowa Ct. App. Aug. 7, 2013) (affirming the district court's calculation of appellant's net income in the amount of $68,496.86 instead of $34,908.66 figure used by appellant who "took full advantage" of federal tax deductions to reduce income); *In re Marriage of Starcevic*, 522 N.W.2d 855, 856-57 (Iowa Ct. App. 1994) ("[W]e find it unacceptable as a matter of public policy to allow a person . . . to generate paper losses which are then deducted from his primary income in order to avoid paying child support as determined by the child support guidelines."); *In re Marriage of McKamey*, 522 N.W.2d 95, 99 (Iowa Ct. App. 1994) (concluding that district court properly increased self-employed husband's income by amounts taken from business for personal use but claimed as business expenses on husband's tax returns).

Without complete tax records, we cannot determine which expenses are a reasonable cost of business and which are inflated. Because Ryan is in the best position to explain his income, he bears the burden of showing what income should be considered and what should be excluded. *Cf. Markey v. Carney*, 705 N.W.2d 13, 20 (Iowa 2005) ("The recipient of extra income is in the best position to present the underlying circumstances to the court, which makes it fair to place the burden on the recipient to show the extra income should be excluded or considered in some other manner."). We are unwilling to accept blindly that Ryan earned only the $29,005.00 reported on the tax return given the evidence of corporate ownership, especially considering checks showing monthly payments from one corporation Ryan owns an interest in to another. *Cf. Schenkelberg*, 824 N.W.2d at 485-86 (determining, based in part on analysis of individual and corporate tax returns, that a husband's average income for four-year period was over $400,000.00 due to distributions from S-chapter corporation rather than the $208,000.00 the husband received in wages alone).

We are especially reluctant to rely on the incomplete tax return given Ryan's own statements suggesting he earns far more than what he reported. In his affidavit, Ryan complains that Kara withdrew $43,891.00 from a joint savings account in September 2020, claiming he contributed "most of" the $50,000.00 the account held at the start of 2020. And in his rebuttal affidavit, Ryan states: "I paid for all 'big ticket items' including all vehicles and monthly insurance premiums for home and auto as well as multiple daily life expenses. Buying the children things, bikes, clothes, toys and many, many things they needed, too numerous to mention." It is difficult to conceive how Ryan, with little to no contribution from

Kara, could save almost $50,000.00 while also buying the family's "big ticket items," paying all of its insurance premiums, and covering daily living expenses—all while earning a gross annual income of $29,005.00. In view of the conflicting and incomplete evidence submitted by the parties, we find Ryan's statements show a much greater cash flow than reflected on the tax return. *See In re Marriage of Ruth*, No. 05-0440, 2006 WL 468773, at *3 (Iowa Ct. App. Mar. 1, 2006) (affirming district court's decision to disallow straight-line depreciation of farm equipment where tax return showed a net income of $11,257.00 based on gross farm income of $255,995.00 and expenses of $244,738.00 because the appellant had "a cash flow which significantly exceeds his taxable farm income"). On this basis, we affirm the finding that Ryan earns about $90,000.00 per year.

In view of our findings on Ryan's income, we affirm the district court's child-support determination. *See Wade*, 780 N.W.2d at 566 (stating that the court must first determine the parties' net monthly income to apply the child support guidelines). Kara's amended child support guidelines worksheet—which shows Ryan's earnings as $90,000.00 per year, Kara's earnings as $46,464.28, and assumes spousal support of $1000 per month rather than the $500 per month the court awarded—shows Ryan's obligation as $1153.09 per month. Although the court ordered Ryan to pay only $1000.00 in child support, Kara does not contest the award of less than provided by the guidelines. Ryan's argument to lower his child support payment is based on his earning only $29,005.00 per year, a claim that we reject. He provides no other compelling reason to reduce further the amount of his child support payment.

We turn then to the district court's award of spousal support to Kara in the amount of $500.00 per month. Spousal support depends on the circumstances of each case and factors the comparative earning capacities of the parties. *See Schenkelberg*, 824 N.W.2d at 486-87. Because the court has "considerable latitude" in determining an award of spousal support, we only disturb the award if it fails to do equity. *Id.* at 486.

Ryan argues it is inequitable to award Kara spousal support a given the parties' respective financial positions. We have already rejected Ryan's claim about his annual earnings. But Ryan also claims that Kara has no need for spousal support given the $43,891.00 she withdrew from the parties' joint savings account when they separated in September 2020. Given the sparse record before us on appeal, we find the matter is best resolved by the district court in dividing the parties' property after a full record is made at the dissolution trial.

Ryan also argues Kara has not shown a need for spousal support because her net monthly income exceeds her total monthly expenses. But Kara's affidavit of financial status lists $3711.68 in monthly expenses. Her net monthly income of $3674.82 from her work as a registered nurse results in a shortfall of $36.84 each month. In contrast, Ryan earns about $90,000 per year or a net monthly income of $5497.50. Because he did not file an affidavit of financial status before the hearing on temporary matters, Ryan's monthly expenses are unknown. Still, his earnings are nearly twice that of Kara's and there is no indication that he cannot meet his financial obligations. And reducing or eliminating spousal support would result in a corresponding increase in the child support Ryan must pay under the guidelines. *See* Iowa R. Ct. 9.5(1)(a)(1) ("If spousal support is to be paid in the

pending matter, whether temporary or permanent, it will be determined first and added to the payee's income and deducted from the payor's income before child support is calculated."). Under these circumstances, we cannot find the district court's award of spousal support inequitable.

Ryan's last contention on appeal concerns the award of temporary attorney fees. Such an award is within the discretion of the court. *See Sullins*, 715 N.W.2d at 255. To overturn an award of attorney fees, a party must show the ruling "rests on grounds that are clearly unreasonable or untenable." *In re Marriage of Erpelding*, 917 N.W.2d 235, 238 (Iowa 2018) (citation omitted). "A ruling is clearly unreasonable or untenable when it is 'not supported by substantial evidence or when it is based on an erroneous application of law.'" *In re Marriage of Kimbro*, 826 N.W.2d 696, 698-99 (Iowa 2013) (citation omitted). For the reasons already cited, we find the award of $1000 in temporary attorney fees is neither unreasonable nor untenable.

Finally, Kara requests an award of her appellate attorney fees. Such an award is not a matter of right but rests in our discretion. *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). In exercising this discretion, we consider the needs of the party seeking appellate attorney fees, the other party's ability to pay, and the merits of the claims made on appeal. *See id.* Given the temporary support and attorney fees awarded by the district court, we decline to award Kara appellate attorney fees.

In summary, we affirm the temporary order providing financial support. Although the record before the court at the temporary matters hearing was

incomplete, our supreme court has observed that it is better to err in favor of awarding such support:

> In some cases it is inevitable that temporary support will be ordered which will be determined, after full hearing, not to have been justified. We believe, however, that in balancing the policy considerations it is preferable to provide temporary support pending the outcome of the case, even if it is later determined that a preponderance of the evidence did not support it. Our concern about such occasional injustice is outweighed by our concern that parties affected by dissolution actions, especially children, be adequately provided for while awaiting a final decision.

*Bork v. Richardson*, 289 N.W.2d 622, 625 (Iowa 1980). Any remaining inequities can be addressed in the dissolution decree.

**AFFIRMED.**