**IN THE COURT OF APPEALS OF IOWA**

No. 16-1996
Filed July 19, 2017

IN RE THE MARRIAGE OF PATRICIA SUE TRIPP
AND CRAIG ALAN TRIPP

Upon the Petition of
PATRICIA SUE TRIPP,
        Petitioner-Appellee/Cross-Appellant,

And Concerning
CRAIG ALAN TRIPP,
        Respondent-Appellant/Cross-Appellee.

_____

        Appeal from the Iowa District Court for Pottawattamie County, Gregory W. Steensland, Judge.

        The husband appeals, and the wife cross-appeals, from the decree dissolving their marriage. **AFFIRMED.**

        Thomas D. Hanson and Regan E. Wilson of Dickinson, Mackaman, Tyler & Hagen, P.C., Des Moines, for appellant.

        J.C. Salvo of Salvo, Deren, Schenck, Gross, Swain & Argotsinger, P.C., Harlan, for appellee.

        Considered by Danilson, C.J., and Potterfield and Bower, JJ.

**POTTERFIELD, Judge.**

Craig Tripp appeals, and Patricia Tripp cross-appeals, from the decree dissolving their marriage. Craig maintains the equalization payment he was ordered to pay Patricia—$200,890—is inequitable and should be reduced by $100,000. As part of his justification, he maintains the district court over-valued the marital home that was awarded to him. Additionally, Craig claims he should have been awarded the entirety of his pension. On cross-appeal, Patricia challenges the numbers the court used in the formula to determine her portion of Craig's pension. She asks that we otherwise affirm the decree and award her appellate attorney fees.

**I. Background Facts and Proceedings.**

Patricia and Craig were married in 1988. They had two children during their marriage, who were both adults by the time Patricia filed for divorce in 2011.

The district court dissolved the parties' marriage on June 6, 2013. At that time, no decision was made regarding the division of property because Craig had serious federal criminal charges pending. Craig was ultimately convicted of tax evasion involving a bar the couple owned. Patricia was not charged, and at the dissolution hearing in July 2016, Craig testified Patricia had not been involved. Additionally, Craig testified the back taxes, interest, and penalty that the Internal Revenue Service (IRS) levied as a result of the conviction was solely his obligation. Craig's attorney made a professional statement that it was estimated Craig owed $174,000 to the government, based on $86,000 in back taxes, a 75% fraud penalty, and the compounding interest on the debt. However, when the court asked if Craig was precluded from negotiating the amount with the IRS, his

attorney stated, "No, I don't mean to say that we're not going to have a scrap with them, Your Honor." When the court reiterated that the amount was "not a done deal yet," counsel responded, "Well, it sure isn't, as far as I'm concerned."

At trial, the parties agreed each had received some inheritance from their parents and they agreed on the value of all properties bought during the marriage, except that of the marital home. Patricia opined the home was worth $130,000. She reached that opinion after considering the assessed value— $80,751—and the recommended listing price from the "market analysis" completed by a third party—$149,583. Craig testified the marital home was worth $65,000. He stated the home was one of the oldest ones in the area and needed new siding and windows. He also testified the house next door was then for sale, that it had the same size lot with "a lot nicer" house, it was listed at $130,000, and no one had looked at it yet.

During Craig's testimony, he mentioned that he had a pension through his employer. The pension had not been listed on any of his financial disclosures, and Patricia testified she was unaware that Craig had it. Patricia requested a share of the pension during her testimony.

The district court entered the "decree of dissolution of marriage" on September 12, 2016. It set aside as non-marital property both parties' inheritances as well as the undetermined amount Craig owed the IRS. In setting aside the debt, the court noted it believed the $174,000 estimate was "artificially high," as Craig had not yet tried to negotiate for a lower amount. The court also found

the payment of these back taxes is due entirely to conduct of Craig, and equity demands that he should pay it. As previously stated, he will have every opportunity to negotiate this to a potentially lower figure. Whether he is able to do that or not, this Court finds that the debt belongs to him.

The court then awarded almost all of the marital property to Craig—as he asked for—and used his values for all of the property, except the marital home. The court found the fair market value of the home to be $100,000. The court determined Craig had been awarded $411,189 in marital assets while Patricia was awarded only $9409—a $401,780 difference. Craig was ordered to pay Patricia $200,890 in an equalization payment so each would receive $210,299 in marital assets.

Finally, the court ordered that Patricia would receive a *Benson* share[1] of Craig's pension. At the time of the decree, the court did not have before it how long Craig had been in the plan nor how many more years he intended to continue to work. The court simply set out

> the formula by which a Qualified Domestic Relations Order [QDRO] shall be prepared and entered. . . . The denominator shall be the number of years Craig has been in this plan. The numerator shall be the number of years the parties were married. Patricia's share of any benefits to be paid will be one-half of the resulting percentage.

Craig filed a motion to amend or enlarge. In it, he maintained "dividing the marital assets before considering the IRS debt leads to an inequitable result." Craig claimed that even though Patricia had not taken part in the tax evasion, she had "lived with him and benefitted from the conduct during the four-year period charged," so it was not inequitable to consider the debt marital. He also

---

[1] *See In re Marriage of Benson*, 545 N.W.2d 252, 255 (Iowa 1996) (explaining the method for dividing pension benefits in a dissolution case).

claimed that if Patricia executed her judgment against him, he would be unable to satisfy his IRS debt without "liquidating the balance of his assets." He asked the court to alter the property division to consider the IRS debt marital and to reduce the equalization payment "to an affordable amount or paid in installments." Additionally, Craig maintained Patricia should not be awarded any of his pension because she did not request the division of Craig's pension "until late in the trial" and the "cash [equalization] payment amortized over fifteen years would give Patricia a 'retirement' benefit of approximately $1000 per month."

In response, the court modified the decree to allow Craig to make the equalization payment in four equal installments, with the first one due on or before December 31, 2016, and the remaining installments due yearly. Craig was ordered to secure the installment payments with collateral, by executing a mortgage to Patricia on the marital home and another property. One mortgage was to be released after two installment payments were made and the second after the final installment payment.

Craig appeals and Patricia cross-appeals.

## II. Standard of Review.

We review dissolution proceedings de novo. *In re Marriage of Gaer*, 476 N.W.2d 324, 326 (Iowa 1991). "There are no hard and fast rules governing the economics provisions in a dissolution action; each decision depends upon the unique circumstances and facts relevant to each issue." *Id.*

**III. Discussion.**

    **1. Equalization Payment.**

Craig maintains the district court's division of marital assets was inequitable. He maintains the equalization payment he is to make to Patricia is too large in light of the amount he owes the IRS following his conviction for tax evasion. Craig complains that he is likely going to be forced to sell some of the properties he was awarded in order to meet his obligations to both the IRS and Patricia. Additionally, he maintains the court overvalued the marital home before it was awarded to him.

At trial, Craig testified he believed the obligation to the IRS to "be his obligation." However, he now takes issues with the district court's setting it aside before equally dividing the marital property between Craig and Patricia. *See In re Marriage of Siglin*, 555 N.W.2d 846, 849 (Iowa Ct. App. 1996) ("Although an equitable award is not required to be equal, substantially equal property awards are generally appropriate in marriages of long duration."). He asks that we reduce the equalization payment by $100,000. In other words, he asks that we take $100,000 of marital assets from Patricia so that it can go to the IRS—ultimately awarding Craig 3/4 of the marital assets and Patricia 1/4. The back taxes, fines, and interest are Craig's alone—as he admitted at trial—and we see no reason to reduce Patricia's share of the marital assets to effectively make Patricia pay for a portion of his tax bill.

Craig complains he will likely be forced to sell some of the properties he received in the decree in order to meet his obligations. Craig asked to be awarded all of the properties, so to the extent his claim involves the "illiquid"

nature of what he received in the division of assets, "we will not now entertain complaints about getting what he asked for." *In re Marriage of Martin*, No. 16-0971, 2017 WL 510975, at *5 (Iowa Ct. App. Feb. 8, 2017).

Craig also maintains the equalization payment is too large because the court overvalued the marital home. Patricia testified the home was worth $130,000 while Craig testified it was worth $65,000. Patricia's value was reached by considering the value placed on the home by outside sources. Craig offered as support for his valuation of the home the asking price of a neighbor's home and his opinion the marital home needed new windows and siding. Still, the court placed a value on the home that was about halfway between the parties' proffered values. The $100,000 value was within the range of permissible evidence, and we will not disturb it. *See In re Marriage of Hansen*, 733 N.W.2d 683, 703 (Iowa 2007) (noting owners are competent witnesses to testify to market value of property, and when "the valuation of the marital residence was within the range of the evidence[, it] should not be disturbed").

Here, the court considered the parties' long marriage—approximately twenty-five years—and divided the marital assets equally. We cannot say such a division was inequitable.

**2. Pension.**

Craig maintains his pension should not have been divided. Patricia asks that we modify the court's division of the pension by ordering the QDRO to be prepared using the span of years from their marriage date in 1988 to the year the division of their property took place—2016—rather than the date the court dissolved their marriage—in 2013.

We consider Craig's claim first. He maintains Patricia should not be awarded any of his pension because she did not ask the court to award her part of it until during the trial. While Patricia did not ask for any part of the pension until trial had already begun, Craig had failed to list his pension on any of his financial disclosures. We do not believe Patricia should be penalized for failing to request part of a marital asset Craig failed to disclose. *See In re Marriage of Branstetter*, 508 N.W.2d 638, 640 (Iowa 1993) ("Pensions in general are held to be marital assets, subject to division is dissolution cases, just as any other property."). Craig also maintains Patricia "has not demonstrated a need for future benefits." As stated above, pensions are marital assets and they are subject to division in an equitable manner. *See* Iowa Code § 598.21(5) (2011). This is in contrast to an award of alimony—which Patricia did not ask for or receive—which requires the consideration of the needs of the receiving party and the ability to pay of the other party. *See Siglin*, 555 N.W.2d at 850 (noting the factors to be considered in determining whether to award alimony and the amount). Here, where Craig had a pension to which he contributed with marital funds during the entirely of the parties' long marriage and Patricia was without a retirement account, it was equitable for the court to divide Craig's pension pursuant to the *Benson* formula. *Cf. In re Marriage of Swenson*, No. 05-2123, 2007 WL 601496, at *4 (Iowa Ct. App. Feb. 28, 2007) (finding it equitable not to divide the spouse's pension where the marriage was one of short duration—less than three years—and the spouse seeking the division of the pension had already been awarded "half the accumulation in an investment retirement

account" the other spouse had through his employer and a "significant cash payment . . . , notwithstanding the brevity of the marriage").

Next, we consider Patricia's claim that we should order the QDRO to be prepared using as the numerator the amount of time between the parties' marriage and the ultimate division of their assets in 2016. While *Benson* did not specifically consider a case where the parties' dissolution takes place a number of years before the division of property, it did explicitly define the numerator in the formula as the "number of years [the parties] were both married and [the spouse with a pension] was covered by the pension plan." 545 N.W.2d at 255. This number is used because it creates a fraction that "represents the percentage of [the] pension attributable to the parties' joint marital efforts." *Id.* Nothing about the later division of property led to Patricia making a "joint effort" toward Craig's pension. We decline to change the court's order regarding the figures to be used in the QDRO.

### 3. Appellate Attorney Fees.

Patricia asks that we award her appellate attorney fees. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006). "Factors to be considered in determining whether to award attorney fees include: 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *Id.* (quoting *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005)). While Craig has been unsuccessful in his appeal, the record does not establish that he has the ability to pay Patricia's fees. We decline to

award Patricia appellate attorney fees. However, we do assess the costs of the appeal to Craig.

**IV. Conclusion.**

Because the district court's division of the marital assets—including the equalization payment Craig was ordered to make to Patricia and the division of Craig's pension—was equitable, we affirm. We decline to award Patricia appellate attorney fees. Costs of this appeal are assessed to Craig.

**AFFIRMED.**