# IN THE COURT OF APPEALS OF IOWA

No. 24-1777
Filed August 20, 2025

**MICHAEL JOHN WELCH,**
        Plaintiff-Appellee/Cross-Appellant,

**vs.**

**ASHLEY ANN SCHULER,**
        Defendant-Appellant/Cross-Appellee.
_____

Appeal from the Iowa District Court for Linn County, Kevin McKeever, Judge.

Ashley Schuler appeals, and Michael Welch cross-appeals, from an order establishing paternity, custody, physical care, visitation, child support, and trial attorney fees. **AFFIRMED ON APPEAL AND AFFIRMED AS MODIFIED ON CROSS-APPEAL.**

Jeremy B. Hahn of Roberts & Eddy, P.C., Independence, for appellant/cross-appellee.

Alexandra N. Doner of Simmons Perrine Moyer Bergman, PLC, Cedar Rapids, for appellee/cross-appellant.

Considered without oral argument by Schumacher, P.J., and Buller and Sandy, JJ.

**SCHUMACHER, Presiding Judge.**

Ashley Schuler appeals from a decree establishing paternity, custody, physical care, visitation, and child support. Ashley challenges the district court's order of physical care of the parties' child with the father, Michael Welch, and claims the court incorrectly determined her income for child-support purposes. Michael cross-appeals, claiming the court erred by awarding a mid-week visit to Ashley and ordering him to pay half of Ashley's trial attorney fees.

Upon review, we find the district court's factual determinations are supported by the record and affirm the physical-care and visitation decisions as well as the child-support calculation. We modify the decree to strike the award of trial attorney fees not authorized by statute. And we deny the parties' requests for appellate attorney fees.

## I. Physical Care and Visitation

Ashley and Michael met in 2019, and Ashley moved into Michael's home in Marion that same year. Their daughter, M.W., was born in April 2020. The parties ended their relationship in approximately September 2021, and Ashley moved with the child to her mother's home in Independence. The following month, Michael filed a petition to establish paternity, custody, physical care, visitation, and child support. As for temporary matters, the parties stipulated to joint legal custody and joint physical care of M.W. with weekly exchanges to take place on Sundays at 6:00 p.m.

Trial took place over two days in June 2024.[1] Ashley was in a relationship with Geoff and had moved into Geoff's home in West Union "several months" prior to trial. Ashley's two older sons also lived in the home, along with M.W. And she and Geoff were expecting a child together. Their home did not have enough bedrooms for their children, but they had plans to renovate it. Ashley was self-employed and earned approximately $40,000 per year cleaning people's homes. Michael was engaged to Erin, whom he lived with in Marion, along with Erin's four daughters, Michael's older child, and M.W. Michael worked as head of operations for Hawkeye Vapor and earned $78,000 per year.

The district court entered a decree in August, ordering physical care of M.W. with Michael and visitation with Ashley every Wednesday overnight and every other weekend, Friday to Sunday.[2] In reaching the physical-care decision, the court stated in part:

> On the bright side of things, the child appears to be healthy, growing, learning and developing in a very good and positive way. She was described during the trial as being healthy, attending pre-school and enjoying activities. She is described positively by both parents. What is clear to the Court is that both parents love the child and provide excellent care for her. It is extremely unfortunate that the parents appear unable or unwilling to provide one another with even a fraction of the kindness they show to the child. As a result, the Court is now forced to select a primary care parent for a child that should have equal access to both parents.
> This is an extremely unfortunate case in the eyes of this judge. In April of this year, I authored a contempt ruling in which I urged the parties to be reasonable and make attempts to cooperate for the

---

[1] A number of exhibits were introduced at trial, one of which (exhibit 10, a USB storage device containing an electronic recording) was marked as admitted in the order concerning management of exhibits but not included in our record on appeal. The parties appear to agree that exhibit 10 was neither provided to nor reviewed or considered by the district court in reaching its decision.

[2] The court ordered exchanges of the child to take place on Sundays at 3:00 p.m. rather than 6:00 p.m. to "accommodat[e]" Ashley's exhanges of her older children.

sake of their minor child.[3]  Given the testimony provided at the June hearing, this advice has apparently fallen on deaf ears.  Rather than make efforts to cooperate with one another for the sake of the child, both parents have appeared to double down on their unreasonable and obstinate behavior.  Neither parent appears to be very supportive of the other parent with regard to anything, including the parent-child relationship for their child.  The distrust and disdain exhibited by the parties to one another is on a level which exceeds most situations even in a family law context.  While the Court understands that there will inevitably be some level of conflict and disagreement in the family law context, the behavior of the parties in this case borders on being totally irrational.

Regarding the ability of the respective parents to provide care and stability to the child, both parents excel at that ability. Although there have been various allegations made regarding the treatment of the child while in Ashley's care, there is no substantial proof that would lead the Court to believe that Ashley is an inappropriate care giver.  Ashley has not been as stable as Michael in providing a residence.  However, Michael has been very unsupportive and suspicious of and hostile towards Ashley.  Ashley's behavior has not been much better.  She seems to avoid communication with Micheal whenever possible.

In the final analysis, many of Michael's attacks on Ashley during the trial did little to further his own cause and actually hurt his chances of attaining primary care due to the fact that they served to illustrate how little he supports Ashley's parent-child relationship with M.J.W. and how little he trusts and respects Ashley.  Nevertheless, Michael was able to demonstrate stability, structure and consistency at a slightly higher level than Ashley.  As a result, the Court finds that Michael should be awarded primary care of the child.  Micheal testified under oath that he is supportive of the parent-child relationship between Ashley and M.J.W.  The Court is expecting that

---

[3] In January 2024, Michael filed an application for rule to show cause alleging Ashley had willfully violated the temporary order "by not providing [him] the opportunity to speak on the phone with the minor child on a 'reasonable basis.'" Following a hearing, the court entered an order denying Michael's contempt application.  Although the court found "[t]here have been numerous phone calls attempted by [Michael] that have been denied by [Ashley]," Ashley "believes that she is providing reasonable phone access to the child."  The court observed, "This situation is unfortunate for a variety of reasons, the most important of which is that the child is caught in the middle of an unnecessary fight between the parents."  The court noted "both parties are now on notice that at least one District Court Judge believes that the manner in which [Ashley] is providing [Michael] with phone access to the child is unreasonable and is not supportive of the parent child relationship."  The court advised the parties "to begin working on their communication immediately if they ever hope to be able to effectively co-parent."

Michael will keep his pledge to be supportive of Ashley's parent-child relationship with M.J.W. from this point forward. If he fails to do so, the Court may decide to reverse its primary care award at a future hearing. The Court is hopeful that notwithstanding the fact that its words were not taken to heart after the April hearing, at this point, the parties will take the Court's words more seriously. Failure to do so will almost certainly result in additional litigation and cause harm to the child in the process.

On appeal, Ashley challenges the court's order placing M.W. in Michael's physical care. She claims the court placed too much reliance on her "housing stability," and "[h]ad the district court appropriately assessed the circumstances and factors," the court would have "arriv[ed] at the correct conclusion that Ashley should be awarded primary care." On cross-appeal, Michael challenges the court's award to Ashley of a mid-week overnight visit with M.W. According to Michael, the "amount of windshield time" required for the mid-week visit "does not serve the child's best interest." We address these issues collectively.

We review dissolution cases de novo, giving "weight to the trial court's factual findings, especially with respect to the credibility of the witnesses." *In re Marriage of Witten*, 672 N.W.2d 768, 773 (Iowa 2003). Questions of physical care are based upon the best interest of the children, and "[t]he objective of a physical care determination is to place the children in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695–96 (Iowa 2007).

The district court found the parties "have almost no ability to cooperate, even on the most basic issues" and "[n]either party has shown much support for the other party's parent-child relationship." The court further observed that Ashley had moved several times in the past two years, most recently "approximately 1.5

hours from [the] Cedar Rapids" area. The court determined the "distance between the parties combined with the incessant disagreements and lack of respect exhibited by the parties towards one another make shared care an impractical solution." However, the court noted that "both parties are strongly bonded to the child, love the child, and are appropriate care givers for the child."

Ultimately, the court determined Michael "has exhibited more stability than [Ashley] over the past two years" and "[a]t present, [he] is a better choice for primary care." The court cautioned, however, "whether or not [Michael] retains this status will depend largely on if he is able to be more supportive of . . . [Ashley]'s parent-child relationship in the future." And the court further stated:

> In order to make the care arrangements more equitable and in the best interest of the child, the Court will award the Respondent (Ashley) additional vacation time with the child. The child is at an age where it is crucial for the precious parent-child bond to be nurtured and allowed to grow. Therefore, the additional vacation time is meant to compensate somewhat for the drastic changes in the care schedule which will be caused by this order.

The district court was in the best position to see, hear, and evaluate the parties first-hand. *Witten*, 672 N.W.2d at 773. Upon our review of the record, we are convinced the district court properly considered all factors in making physical-care and visitation decisions in the best interest of M.W. We affirm the court's determinations.

## II. Child Support

Ashley claims the court erred in calculating her child-support obligation. Specifically, she argues the court "imput[ed] an income higher than the totality of her business earnings" by "fail[ing] to attribute any deductions to Ashley for legitimate business expenses," including expenses for "cleaning products" and

"mileage" "to travel to and from her client's homes." But Ashley failed to provide support for her claim before the district court. Ashley filed a motion pursuant to Iowa Rule of Civil Procedure 1.904(2), challenging in part the court's "imput[ing] her] with a $40,000.00 per year income." The court denied Ashley's claim, noting:

> The Court acknowledges that [Ashley's] income . . . should perhaps be reconsidered. However, the Court has no information regarding how such a consideration would impact the child. Neither party provided child support guidelines to the Court for the scenario of [p]rimary care to Michael and Ashley making $35,000. Without such information, the Court cannot determine if reconsidering Ashley's income would result in a child support calculation which would be in the best interest of the child. Prior to the Court reaching any conclusion regarding a reconsideration of [Ashley]'s income, updated guidelines should be provided to the Court.[4]

Even if preserved, we would find Ashley's claim unpersuasive. "In calculating child support, the first step is to determine the parents' current monthly net income from the most reliable evidence presented," *In re Marriage of Knickerbocker*, 601 N.W.2d 48, 51 (Iowa 1999), which "often requires the court to carefully consider all of the circumstances relating to the parent's income," *In re Marriage of Powell*, 474 N.W.2d 531, 534 (Iowa 1991). In doing so, "some consideration must be given to business expenses reasonably necessary to maintain the business or occupation." *In re Marriage of Gaer*, 476 N.W.2d 324, 329 (Iowa 1991); *see* Iowa Ct. R. 9.5(1)(c) ("Gross income from self-employment is self-employment gross income less reasonable business expenses."). "Although the Iowa child support guidelines do not specifically provide for a deduction for depreciation expenses, . . . 'depreciation should not categorically

---

[4] On this appellate record, it appears that neither party filed updated child support guidelines after the district court's ruling on the rule 1.904(2) motion.

either be deducted as an expense or treated as income, but rather that the extent of its inclusion, if any, should depend on the particular circumstances of each case.'" *Knickerbocker*, 601 N.W.2d at 51 (quoting *Gaer*, 476 N.W.2d at 328).

The parties filed affidavits and child support guidelines worksheets setting forth their income. Ashley set forth her income as $35,000 and Michael's as $78,000, but she only provided guidelines listing herself as a primary-care or joint-care parent. At trial, Ashley testified her income "changes each year" based on how many homes she cleans. She stated she had not yet filed her taxes for 2023. When asked how she prepared her income for taxes, she responded, "I go through my incomes and use—I mean, it's pretty self-explanatory. You subtract the two from the one or you know what I'm trying to say." Ashley testified, "Last year, I believe I made roughly . . . 43, $48,000. . . . or higher" before expenses.

As noted above, the court found Ashley's income to be $40,000 for child-support purposes.[5] "We recognize that determining income for self-employed individuals may be difficult," which is especially true here, where "very little of the trial testimony concerns [Ashley]'s income." *Thorn v. Weber*, No. 24-0734, 2025 WL 1704391, at *4 (Iowa Ct. App. June 18, 2025). And Ashley specified neither the amount of her expenses nor what the expenses were for. *See id.* at *5 ("Other than the self-generated spreadsheet, Brian presented no evidence to support the

---

[5] At trial, Ashley presented Exhibit W, a handwritten note "that basically was a track of [her] income and [her] expenses" in 2022. Ashley listed an expense for "supplies" of $1688.96, but she listed no expense for "mileage." Even crediting Ashley for *all* the expenses listed on Exhibit W (including "Venmo fees," "supplies," "car payment," "phone," and "insurance"), totaling $4528.73, the district court's finding of $40,000 is still well within the range of the evidence considering Ashley's testimony as to her income in 2023 and that she continued to maintain approximately the same client base.

claimed expenses."). In these situations, we "credit the factual findings of the district court, especially when considering the credibility of witnesses." *In re Marriage of Arpy*, No. 13-0021, 2013 WL 5951358, at *3 (Iowa Ct. App. Nov. 6, 2013). Under this record, we decline to disturb the district court's determination of Ashley's income for child-support purposes.

## III. Trial and Appellate Attorney Fees

Michael challenges the district court's order that he "pay 50%" of Ashley's trial attorney fees. The district court has discretion whether to award the prevailing party attorney fees in a chapter 600B proceeding. *See* Iowa Code § 600B.26 (2021) ("In a proceeding to determine custody or visitation . . . under this chapter, the court may award the prevailing party reasonable attorney fees."). Accordingly, we will not disturb the court's decision to award attorney fees absent a finding of abuse of discretion. *Markey v. Carney*, 705 N.W.2d 13, 25 (Iowa 2005).

Here, the parties stipulated that Michael was M.W.'s biological father and each sought physical care. "The district court gave careful consideration to all facts and circumstances presented and awarded [Michael] physical care, also requiring [Ashley] to pay child support to [Michael]. Thus, on the central trial issue, [Michael] prevailed." *In re Ferguson*, No. 08-1593, 2009 WL 1676996, at *2 (Iowa Ct. App. June 17, 2009) (addressing a challenge to a trial-attorney fee award to a non-prevailing party entered under chapter 600B). Because the court's discretion to grant attorney fees in this case may only be exercised on behalf of the "prevailing party,"[6] the court was without discretion to award fees to Ashley. *See id*.; *see also*

---

[6] We disagree that the court's adoption of Ashley's proposed visitation schedule makes her a prevailing party in this case.

*In re Marriage of Rosenfeld*, 668 N.W.2d 840, 848 (Iowa 2003) ("As a general rule in Iowa, . . . attorney fees are not allowed in the absence of a statute or contract authorizing such an award."). We therefore modify the decree to strike the court's award of trial attorney fees to Ashley.

Both parties ask that we award them appellate attorney fees. We have discretion to award appellate attorney fees to the prevailing party. *See Markey*, 705 N.W.2d at 26. In exercising that discretion, we consider "the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the trial court's decision on appeal." *Id.* (citation omitted). Considering these factors as applied to the facts of this case, the parties' requests for appellate attorney fees are denied. Costs on appeal shall be assessed to Ashley.

**AFFIRMED ON APPEAL AND AFFIRMED AS MODIFIED ON CROSS-APPEAL.**